IRVING, P.J.,
for the Court:
¶ 1. David A. Roberts, having had physical custody of his biological son, C.M.R., appeals a judgment of the Jackson County Chancery Court, which modified the custody order from David’s having sole custody to his having joint physical custody with Liza Daniella Lopez, the child’s biological mother. On appeal, David alleges that the chancery court committed eleven errors, some of which overlap. Therefore, for the sake of brevity and clarity, we have recast his issues as follows: (1) the chancery court erred in not dismissing Liza’s amended complaint; (2) the chancery court erred in finding that David committed fraud that justified setting aside the previous custody order(s); (3) David was denied procedural due process as a result of certain rulings of the court; (4) the chancery court erred in failing to make an on-the-record Albright[1] analysis; (5) the chancery court erred in its final custody order; and (6) the chancery court erred in assessing guardian ad litem fees to David. Finding that the chancery court did not err, we affirm.
FACTS
¶ 2. Liza first met David in April 2008, when she went to see him about representing her in a divorce proceeding.[2] David explained to Liza that he was more interested in having a relationship with her than representing her in the divorce proceeding. Liza agreed and employed different counsel to represent her. Eventually, Liza moved in with David. C.M.R. was born on October 15, 2009, and David and Liza continued to live together after C.M.R.’s birth.
¶ 8. David and Liza had a contentious relationship during their time together. In December 2009, Liza became upset with David over his relationship with another woman and intentionally struck the woman’s vehicle with her vehicle in the parking lot of a local restaurant where David and the other woman were dining. Soon after the incident, Liza moved out of the home. The vehicle incident led to a felony charge of aggravated assault against Liza. David represented Liza in this matter, and on January 13, 2010, Liza appeared in Pasca-goula Municipal Court and entered a guilty plea to a reduced charge.
¶4. On February 4, 2010, David filed an emergency petition for a temporary restraining order (TRO) and a complaint for permanent custody, citing the car incident and Liza’s “erratic behavior.” The chancery court issued the TRO granting temporary custody of C.M.R. to David and scheduled a hearing for a permanent restraining order. However, according to Liza, before the permanency hearing could be held, David approached her and offered to give her custody of C.M.R. if she would agree to move back in with him. He advised that he would draft the necessary paperwork to effectuate the change in custody. She agreed and moved back in with David. As promised, David drafted an agreed order setting aside the restraining order and awarding primary physical custody of C.M.R. to Lizá. This agreed order was filed February 12, 2010, just eight days after the TRO had been placed in effect.
¶ 5. In May 2010, Liza moved out of the home again. She explained that she could no longer take the constant abuse from David. Then on June 10, 2010, the parties filed a joint complaint for modification requesting that sole custody of C.M.R. be given to David, with reasonable visitation *397 to Liza. The complaint was sworn to by both Liza and David and stated, without explaining, that a material change in circumstances had occurred that was detrimental to the best interests of C.M.R. However, according to Liza, she did not sign the complaint before the notary, David’s sister, who allegedly attested her signature. On the other hand, David testified that Liza signed the complaint before the notary and agreed to the modification of her own free will. The joint complaint was accompanied by an agreed order changing custody from Liza to David, with reasonable visitation to Liza. The chancery court entered the agreed order as drafted by David.
¶ 6. On August 24, 2011, Liza, alleging fraud committed by David, filed an initial complaint to set aside all orders previously entered in this cause. On October 7, 2011, David was served with the initial complaint, a Mississippi Rule of Civil Procedure 4 summons, and a Mississippi Rule of Civil Procedure 81 summons, which commanded him to appear and defend on November 15, 2011. On October 26, 2011, David filed an answer and affirmative defenses in which he denied the gravamen of Liza’s complaint and asserted that her complaint should be dismissed because it was untimely, as the order that she was seeking to set aside was more than six months old. On November 2, 2011, David filed a motion to dismiss, alleging that Mississippi Rule of Civil Procedure 60 was the proper mechanism for obtaining relief from the June 10, 2010 judgment and that Liza’s complaint was untimely. On November 15, 2011, after all parties appeared in court, the chancellor recused himself; and the Mississippi Supreme Court appointed Judge Hollis McGehee as a special judge to hear the matter. On February 3, 2012, Liza filed a motion to amend, which was granted. She filed her amended complaint on February 10, 2012, which, in addition to seeking to set aside previous court orders, sought, as an alternative, custody modification. A Rule 81 summons on the amended complaint was issued on July 3, 2012, and served on David on July 5, 2012. The summons ordered David to appear on August 24, 2012.
¶ 7. Hearings were held on Liza’s amended complaint' on August 24, 2012, and September 12, 2012. David appeared and participated in the these hearings. On September 20, 2012, the chancery court entered a judgment that granted Liza’s amended complaint and “all prior orders in this cause touching upon the care, custody, and control of C.M.R. are hereby set aside and held for naught, ab initio.” The chancery court appointed a guardian ad litem (GAL), and awarded temporary joint custody to the parties, with specific conditions. On May 9, 2013, after making some modifications to the temporary custody order, the chancery court entered a final judgment awarding the parties joint custody of CM.R. David appeals.
DISCUSSION OF THE ISSUES
¶ 8. At the outset, we note that Liza did not file a brief in response to David’s appeal. In this instance, automatic reversal is not required.
Ordinarily, where a party fails to file a brief on appeal, we take the issues raised by the opposing party as confessed. In matters of child custody and support, however, in the absence of an appellee’s brief, our practice is to make a special effort to review the record for support for affirmance.
Barber v. Barber, 608 So.2d 1338, 1340 (Miss.1992) (internal citations omitted). “[Where] the appellant’s brief makes out an apparent case of error, we [are] not [obligated] to look to the record to find a way to avoid the force of the appellant’s *398 argument.” Westinghouse Credit Corp. v. Dep. Guar. Nat’l Bank, 304 So.2d 686, 637 (Miss.1974). Having thoroughly considered David’s issues, we can say with confidence that the judgment should be affirmed. Therefore, we address the merits of the issues that David has presented by utilizing our familiar standard of review: “[T]his Court will not disturb the chancery court’s findings unless the court was manifestly wrong, the court abused its discretion, or the court applied an erroneous legal standard.” Andrews v. Williams, 723 So.2d 1175, 1177 (¶ 7) (Miss.Ct.App.1998) (citing Sandlin v. Sandlin, 699 So.2d 1198,1203 (Miss.1997)).

I. Failure to Dismiss the Amended Complaint

¶ 9. David asserts that Liza failed to serve him within the 120 days set forth in Mississippi Rule of Civil Procedure 4(h), which states:
If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court’s own initiative with notice to such party or upon motion.
Notwithstanding the provisions of Rule 4(h), Rule 81(a)(9) provides, in pertinent part:
Applicability in General. These rules apply to all civil proceedings but are subject to limited applicability in the following actions which are generally governed by statutory procedures [:] ... Title 93[3] of the Mississippi Code of 1972.
(Emphasis added).
¶ 10. Rule 81(d)(2) provides that modification of custody matters “shall be triable 7 days after completion of process in any manner other than by publication....” Rule 81(d)(5) provides in part:
Upon the filing of any action or matter listed in subparagraphs (1) and (2) [of Rule 81(d) ], summons shall issue commanding the defendant or respondent to appear and defend at a time and place, either in term time or vacation, at which the same shall be heard. Said time and place shall be set by special order, general order[,] or rule of court.
David was served with a Rule 81 summons commanding him to appear at the August 24, 2012 hearing. Therefore, it is of no moment that Liza’s initial complaint and amended complaint, which sought to set aside or modify previous custody orders, were filed more than 120 days prior to David being served with the Rule 81 summons. The modification of custody orders that Liza sought was governed by Rule 81(d), not Rule 4(h) as David contends. Moreover, David appeared and participated generally in the August 24, 2012 hearing. So even if process were defective, which it was not, David waived the defect by his appearance and general participation in the hearing. See Isom v. Jernigan, 840 So.2d 104, 107 (¶ 9) (Miss.2003). Thus, this issue is without merit.
¶ 11. Next, David, citing Rule 60(b)(1) of the Mississippi Rules of Civil Procedure, asserts that any motion to set aside a judgment, if based on fraud, misrepresentation, or other misconduct of an adverse party, must be filed within six months after entry of the judgment. Rule 60(b) provides, in pertinent part:
*399 (b) Mistakes; Inadvertence; Newly Discovered Evidence; Fraud; etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
(1) fraud, misrepresentation, or other misconduct of an adverse party;
[[Image here]]
The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than six months after the judgment, order, or proceeding was entered or taken.
¶ 12. David is correct that Rule 60(b)(1) requires that a motion for relief from a judgment obtained as a result of fraud by an adverse party be brought within six months of entry of the judgment. However, a substantial misrepresentation of facts upon which a judgment is based is “a fraud on the court, for which there is no limitation of time restricting the court from affording a remedy.” See Trim, v. Trim, 33 So.3d 471, 473 (¶ 3) (Miss.2010) (holding that “submission of a substantially false [Uniform Chancery Court] Rule 8.05 financial disclosure statement constituted a fraud on the court, and no time limit was applicable to the court’s ability to remedy the fraud by modifying the final judgment of divorce”). Moreover, the totality of David’s actions justifies consideration of Liza’s motion under the broader umbrella of subsection (6) of Rule 60(b): “[A]ny other reason justifying relief from the judgment.” While it is clear that David’s actions perpetrated a fraud upon the court, there is substantial evidence that he also manipulated and intimidated Liza throughout the process of obtaining the orders and judgments that Liza sought to set aside. Therefore, even if Liza were subject to a time limitation in bringing her complaint, we find, on the facts of this case, that equity and justice require that she be given a reasonable time to do so, and that she not be constrained by the six-month time-line for actions seeking to set aside a judgment on the basis of fraud.
¶ 13. In Briney v. United States Fidelity & Guaranty Co., 714 So.2d 962, 967 (¶ 14) (Miss.1998), the Mississippi Supreme Court found that “[w]hat constitutes [a] reasonable time [under Rule 60] ... depend[s] upon the facts in each individual case. [We] consider whether the party opposing the motion has been prejudiced by the delay in seeking relief and whether the moving party has some good reason for his failure to take appropriate action sooner.” Here, David was not prejudiced in any way because he actively participated, vis-a-vis his attorney, throughout the proceedings and Liza certainly had good reasons for failing to act sooner. Accordingly, this argument is without merit.
¶ 14. Finally, David complains that the chancery court committed error by not dismissing Liza’s amended complaint because of her failure to plead fraud with particularity, as required by Rule 9(b) of the Mississippi Rules of Civil Procedure. However, after reviewing Liza’s amended complaint, we find that fraud was pleaded in accordance to Rule 9(b). Specifically, Liza asserted in count one that she “separated from [David] because of not only [the] abuse, but duress, fraud, threats, and physical and mental stress.” Further, the amended complaint stated in paragraph three that through “duress, threats, and physical abuse [by David], [Liza] was forced to sign a so call [sic] AGREED ORDER OF MODIFICATION dated June, 2010.” We find that the pleading satisfies the particularity requirement of Rule 9(b) and effectively put David on notice as to the basis of Liza’s request to set aside the court’s previous rulings regarding custody.

*400
II. Setting Aside Previous Custody Orders

¶ 15. David argues that the chancery court erred in finding fraud on his part. The chancery court stated:
[T]he Court finds that this entire matter and every pleading and order entered herein to date is completely a product of David overreaching [Liza], his “client,” and fraud by David, on the Court and on [Liza].... David’s actions!,] from [the moment he was attracted to Liza], where he intermittently served as [Liza]’s counselor, attorney, and simultaneous[ly] her adversary[,] are reprehensible and not acceptable or sustainable under any view of the facts of this case.
David prepared documents transferring custody of C.M.R. from him to Liza when he found it in his interest to do so and then back to him when he yet again found it in his interest to do so, all in the absence of a factual basis to support the changes. Also, he advised Liza that he would take care of the criminal charges that she faced after she struck his “girlfriend’s” car, only to have her plead guilty to a reduced charge that he would later use to gain a temporary restraining order against her and a transfer of custody of C.M.R. to him. The chancery court believed that David took advantage of Liza “using his legal background and standing to intimidate and stifle [Liza]” and led her to feel vulnerable. The chancery court found that Liza’s testimony was credible and that David’s misconduct warranted setting aside the previous custody agreements. After a review of the record, we find no error in the chancery court’s assessment. This argument is without merit.
¶ 16. David asserts that there was a lack of evidence to grant Liza’s complaint to set aside the previous orders, including the June 10, 2010 agreed custody order. “A chancery court retains power to amend an agreed judgment in a domestic-relations matter to conform to the true facts where one party conceals relevant facts from it and the other party.” Pulliam v. Smith, 872 So.2d 790, 794 (¶ 7) (Miss.Ct.App.2004). “Appellate review of the decision to grant a Rule 60(b) motion is limited to an abuse of discretion.” Pulliam, 872 So.2d at 794 (¶ 7).
The party asserting the motion has the burden of proof of showing: (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker’s knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the person and in the manner reasonably contemplated, (6) the hearer’s ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, and (9) the party’s consequent and proximate injury.
Id. Liza testified that she was strong-armed by David into signing documents that represented that she was a willing party to the June 10, 2010 custody arrangement. As stated, the chancery court found the allegations to be serious and credible. We find that the chancery court did not abuse its discretion in setting aside the previous orders, conducting an Al-bright analysis, and awarding joint custody to the parties.

III. Due Process

¶ 17. David makes much of the conditions set by the chancery court in the temporary order — namely, that the chancery court prohibited the parties from utilizing Rule 59 of the Mississippi Rules of Civil Procedure, without a written request of the GAL, to address issues regarding the provisions in the temporary order. The chancery court, here, was in a unique position. It was required to balance the rights of the parties while also allowing time to see if the custody arrangement set *401 forth in the temporary order was in the best interest of C.M.R. “[T]he polestar consideration in child[-]custody cases is the best interest and welfare of the child.” Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983). In this case, the parties had filed several motions leading up to the trial and were likely to file many more. Further filings could have delayed or disrupted the stability that the temporary order hoped to create. While we are cognizant of the procedural anomaly, we find the chancery court did not err, and this argument is without merit.
¶ 18. David also believes that he was denied a full hearing during the finalization of the custody arrangement. At the time that the chancery court entered the temporary order, the court stated that it would delay entering a final custody order for six months to see how the custody arrangements, contained in the temporary order, affected C.M.R. After six months, the chancery court met in chambers with the attorneys for the parties and the GAL to discuss whether the temporary custody arrangement had worked for all parties involved. After the discussion in chambers, the parties were allowed to express in open court any other issues that they wanted the chancery court to consider. Thereafter, the court entered a final judgment, incorporating the terms and conditions of the temporary order with a few modifications as requested by the parties. Apparently, David expected that an additional hearing would be held before the chancery court entered its final judgment. However, at the time that the temporary order was entered, the court never stated that it would have another full-blown hearing prior to entering a final judgment. Moreover, David has failed to identify any statute or caselaw that requires a “full” hearing at a final custody determination. As stated, the chancery court met with the parties’ attorneys and the GAL to discuss any necessary modifications of the temporary order. An attorney is an agent of his client. See O.W.O. Invs., Inc. v. Stone Inv. Co., 32 So.3d 439, 447 (1122) (Miss.2010). David’s attorney utilized the opportunity in chambers and asked the chancery court to remove the requirement that the parents meet face-to-face every week. The chancery court agreed. In addition, in open court, David had another opportunity to present issues regarding joint custody and requested that the pick-up/drop-off location for C.M.R. remain the same.
¶ 19. Finally, David argues that the parties did not “agree” on the content of the final order. The proposed order that David submitted to the court and the final order that the court entered do not differ substantially. As noted, there were only a few issues to resolve, as the temporary custody arrangement was working. We also note that Liza did not make any objection to the final custody arrangement and in essence “agreed” to the resolution. This argument is without merit.
IV. Albright Analysis
¶ 20. When a chancery court has applied the correct legal standard to a custody determination, this Court will not disturb the factual findings that are supported by substantial evidence. See Gilliland v. Gilliland, 969 So.2d 56, 71 (¶ 53) (Miss.Ct.App.2001). In this case, the chancery court’s findings were well supported. In the September 13, 2012 judgment, the chancery court, in considering the Albright factors, made substantial findings as to each factor and fashioned a custody arrangement that it deemed in the best interest of C.M.R. The chancery court also noted that David was a “licensed attorney who took full advantage of his position, legally, financially, and other *402 wise[,] to overreach a dependant, much less worldly and then vulnerable young girl.” The court also found that the June 2010 custody order “and everything that occurred in this case up to now to be the result of highly unethical and inherently unfair actions of [David],” which ultimately resulted in the change of custody from sole to joint. We cannot find any error in the chancery court’s evaluation of the Albright factors. This issue is without merit.

V. Final Custody Award

¶ 21. David complains that he and Liza do not get along and, therefore, joint custody is ill-advised. We disagree. The record supports the award of joint custody. The GAL’s report also supported this decision. While there may be animosity between the parents, the GAL’s report finds that C.M.R. “doesn’t seem to know that there are difficulties, which is a testament to his parents’ efforts to keep their negativity from him.” See generally Phillips v. Phillips, 45 So.3d 684 (Miss.Ct.App.2010). After a thorough review of the record, we find that the chancery court did not err in awarding joint custody. This assignment of error is without merit.
¶22. David also points out that the chancery court failed to included in the final judgment that Liza would be responsible for one-half of the costs of daycare, as stated during its bench ruling. While we agree that the chancery court stated that “the daycare would remain the same and mother and father would share equally in that expense[,]” and failed to include this in his final judgment, David has waived this issue on appeal because he did not bring this matter to the chancery court’s attention. David should have filed a motion pursuant to Rule 59 of Mississippi Rules of Civil Procedure, seeking an amendment of the judgment. David attempts to justify his dereliction by contending that the “injunction” set forth in the temporary custody order was continued in the final order and prohibited him from filing a timely post-trial motion. However, it is clear that the injunction set forth in the temporary order was viable only during the six-month period that the temporary order was in effect. Therefore, as stated, David is procedurally barred from raising this issue on appeal.
¶ 23. Finally, David contends that the chancery court failed to set out a holiday schedule in the final judgment. He cites Fields v. Fields, 830 So.2d 1266 (Miss.Ct.App.2002), to support this assertion. We find that Fields is not at all analogous to the case at hand. In Fields, the father was a noncustodial parent seeking to modify visitation. Id. at 1266-67 (¶¶ 2-4). On the other hand, David has joint custody and, according to the terms of the final judgment, has custody of C.M.R. every other week. On these facts, we cannot find that the chancery court abused its discretion.

VI. Guardian ad Litum Fees

¶ 24. David argues that the chancery court erred in ordering him to pay the GAL’s fees. Rule 13(d) of the Uniform Rules of Youth Court Practice provides:
The guardian ad litem shall be paid a fee in the performance of duties pursuant to section 43-21-121(6) of the Mississippi Code. The court may order financially able parents to pay for the reasonable fees of the guardian ad litem, or a portion thereof, pursuant to section 43-21-619 of the Mississippi Code.
The chancery court was within its discretion to have David pay the remainder of the fee for the GAL’s services. We find this argument without merit.
¶ 25. For the foregoing reasons, having found that the chancery court did not err *403 in the issues presented, we affirm the chancery court’s final judgment.
¶ 26. THE JUDGMENT OF THE JACKSON COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., GRIFFIS, P.J., ISHEE, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. BARNES AND JAMES, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.

. Albright v. Albright, 437 So.2d 1003 (Miss.1983).

. David has since been disbarred.

. This title relates to domestic relations.