# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2012-CA-00802-COA

IN RE: GUARDIANSHIP OF DEMON B.                            APPELLANT
MCCLINTON: MICHAEL J. BROWN

v.

THOMAS A. MCCLINTON JR.                                    APPELLEE


| | |
|---|---|
| DATE OF JUDGMENT: | 03/20/2012 |
| TRIAL JUDGE: | HON. J. DEWAYNE THOMAS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | CLAYTON LOCKHART |
| ATTORNEYS FOR APPELLEE: | PRECIOUS MARTIN |
| | SUZANNE G. KEYS |
| NATURE OF THE CASE: | WILLS, TRUSTS, AND ESTATES |
| TRIAL COURT DISPOSITION: | FOUND APPELLANT IN CONTEMPT FOR FAILURE TO ACCOUNT FOR OR REPAY MISSING GUARDIANSHIP FUNDS |
| DISPOSITION: | AFFIRMED - 02/03/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### CONSOLIDATED WITH

### NO. 2012-CA-01979-COA

IN RE: GUARDIANSHIP OF DEMON B.                           APPELLANTS
MCCLINTON: THOMAS A. MCCLINTON JR.
AND  LOTTIE CAMPBELL

v.

DEMON B. MCCLINTON                                         APPELLEE


| | |
|---|---|
| DATE OF JUDGMENT: | 11/13/2012 |
| TRIAL JUDGE: | HON. J. DEWAYNE THOMAS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |

ATTORNEY FOR APPELLANTS:      RICK D. PATT
ATTORNEYS FOR APPELLEE:       PRECIOUS MARTIN
                              SUZANNE G. KEYS

NATURE OF THE CASE:           WILLS, TRUSTS, AND ESTATES
TRIAL COURT DISPOSITION:      FOUND APPELLANTS IN CONTEMPT
                              FOR FAILURE TO ACCOUNT FOR OR
                              REPAY MISSING GUARDIANSHIP FUNDS
DISPOSITION:                  AFFIRMED IN PART AND REVERSED
                              AND REMANDED IN PART - 02/03/2015

MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE LEE, C.J., ROBERTS AND CARLTON, JJ.**

**ROBERTS, J., FOR THE COURT:**

¶1.    Today's case is a prime example of how the unanticipated receipt of a substantial amount of money can result in destroyed lives, broken familial relationships, and even incarceration.  Following his mother's death in 1999, DeMon McClinton (DeMon), sixteen-years old at the time, inherited over three million dollars.  The Hinds County Chancery Court appointed DeMon's father, Thomas McClinton Jr. (McClinton), as guardian in 2000, and he hired attorney Michael J. Brown to help administer and oversee the guardianship.  DeMon's guardianship was closed in 2006, but through numerous unauthorized actions by McClinton, Brown, and other persons, that will be outlined in much greater detail later in this opinion, the bulk of DeMon's inheritance went missing.  After appointing a special master to investigate the guardianship's finances, the chancery court found Brown, Linus Shackelford,[1] McClinton, and Lottie Campbell in contempt for their misuse and misappropriation of

---

[1] Through a joint motion for dismissal pursuant to Mississippi Rule of Appellate Procedure 42(b), and in contemplation of an agreeable settlement between Shackelford and DeMon, Shackelford's appeal was dismissed by order of this Court on November 25, 2014.

2

guardianship funds, and it ordered them incarcerated until they repay the guardianship. These findings of contempt are at issue in this appeal. We affirm as it relates to Brown. We also affirm as it relates to the chancery court's holding McClinton and Campbell in contempt, but reverse and remand for the chancery court to specifically address McClinton's and Campbell's inability to pay.

## FACTS AND PROCEDURAL HISTORY

¶2.    Rebecca Henry, daughter of prominent civil rights leader, Aaron Henry, died in 1999, leaving her estate to her two sons, one of them being DeMon McClinton. DeMon, sixteen-years old at the time of his mother's death, inherited half of her estate, requiring the appointment of a guardian and the opening of a guardianship on DeMon's behalf. McClinton, DeMon's biological father, petitioned to be appointed DeMon's guardian and to open a guardianship for DeMon's inheritance. To aid him in establishing and overseeing the guardianship, McClinton hired attorney Brown, and on June 16, 2000, the chancery court issued an order opening the guardianship and appointing McClinton as DeMon's guardian. Regrettably, McClinton, as guardian, was never required to post a bond guaranteeing his faithful performance of his duties. In its order, the chancery court ordered that "if bond and accounting are dispensed with, any guardianship funds obtained will be deposited in a fully insured account at a banking corporation in this state, there to remain until further order of this [chancery c]ourt."

¶3.    DeMon turned twenty one, the age of majority, on November 30, 2004; however, prior to the closing of the guardianship, attorney Glover Russell was retained to investigate

3

distributions from Rebecca Henry's estate in Coahoma County. On November 21, 2005, Russell, although his representation of DeMon apparently had been terminated, filed a petition, by a next friend, to compel an accounting of the guardianship. In his petition, he stated that McClinton informed him that $300,000 was withdrawn from the guardianship, without chancery court approval, for an unauthorized and unpaid loan. Additionally, one million dollars belonging to the guardianship was never deposited into the guardianship estate but was deposited into an account maintained by Brown. However, the prior chancellor, Stuart Robinson, approved the final accounting and closed the guardianship, and an order was entered to that effect on August 11, 2006, without specifically addressing Russell's petition.

¶4. Three years later, on September 4, 2009, McClinton filed a petition to reopen the guardianship and to be reappointed guardian of the now-adult DeMon. According to the petition, McClinton alleged that Brown loaned guardianship money, without McClinton's or the chancery court's approval, to Shackelford to invest in a cemetery, and there had not been any repayment on the loan. On September 30, 2009, the chancery court granted McClinton's petition to reopen the guardianship. Shortly thereafter, McClinton filed a petition for accounting of the guardianship. The petition specifically sought information related to two checks issued from the Rebecca Henry estate that were cashed by Brown, but unaccounted for in the guardianship. The petition also requested the chancery court to compel Shackelford and Brown to show that they have "satisfied the signed promissory note to repay the unauthorized transactions" from the guardianship.

¶5.     The chancery court did order Brown to provide a more detailed accounting of the guardianship funds expended throughout the course of the guardianship.  After several hearings on the issue where Brown failed to give "meaningful explanation or testimony as to account for the funds inherited by De[M]on . . . from his mother's estate[,]" or provide a "satisfactory explanation of the unethical 'loans' of [g]uardianship funds to himself and . . . Shackelford[,]" the chancery court, by order on February 1, 2012, found Brown "in willful and contumacious contempt of this [chancery court] for his failure to account . . . for the funds he has borrowed from . . . [DeMon] without order of the [chancery court]" and also for "his failure to deposit [DeMon's] funds in a federally insured banking institution pursuant to [Mississippi Code Annotated s]ection 93-13-17 [(Supp. 2014)] as ordered by . . . [the chancery c]ourt on June 16, 2000."  Additionally, the chancery court noted that Brown committed a fraud upon the court  relating to the documents and accounting he submitted when closing DeMon's guardianship in 2006, as well as the $398,000 attorney fee he received.  Brown was ordered to be "immediately placed within the confines of the Hinds County Jail until [he] purges himself of this contempt . . . ."  The chancery court also stated that Brown would be permitted to post bond for his conditional release should he appeal the final judgment.

¶6.     Brown filed a motion for reconsideration, and on February 7, 2012, the chancery court entered an order granting Brown a conditional release from the Hinds County Detention Center after posting a $100,000 bond and agreeing to appear on March 20, 2012, for a hearing and to provide "a complete accounting for all funds that came into Brown's

possession from . . . [DeMon's] guardianship, and to show cause why Brown should not be further held in contempt of . . . the [chancery c]ourt."

¶7.    The following day, the chancery court appointed attorney and C.P.A. Paul Rogers as special master to investigate the guardianship's finances and to report his findings to the chancery court. Rogers filed his first Report of Special Master on March 19, 2012, in which he stated that "the funds to be accounted for by the Guardian and his attorney total $3,441,736.45." The only disbursements of guardianship funds authorized by the chancery court were: $398,000 to Brown for attorney's fees; $79,293.13 to McClinton for a guardian fee and expenses; $1,600.47 to another law firm for attorneys' fees; and a $3,000 monthly allowance for DeMon's expenses. However, Rogers found that Brown was responsible for $2,035,573.36 unaccounted for from the guardianship. At this point, Rogers was unable to provide any specific amount owed by McClinton because McClinton had not yet provided the necessary documentation of the assets that came into the guardianship, the disbursements, and a summary of the remaining assets. Additionally, Rogers noted that McClinton's motion for payment of a guardian fee and expenses was not in compliance with Uniform Rule of Chancery Court 6.11, because it neither contained the required financial information nor did it list the expenses for which McClinton sought reimbursement. And "McClinton remains answerable to . . . [the chancery c]ourt for his breach of duties and false statements in the management of this Guardianship's funds."

¶8.    Brown appeared before the chancery court again on March 20, 2012. Following that hearing, the chancery court entered a "[f]inal [j]udgment of this [chancery c]ourt [f]inding

6

Michael J. Brown in [c]ontempt[.]"  The chancery court found Brown to be "in willful and contumacious contempt" for:

1.  [H]is unapproved loans of guardianship funds to third parties;
2.  [H]is fraudulent and unreasonable [attorney's] fee;
3.  [H]is personal loans from . . . [DeMon, a minor];
4.  [H]is forgery of two checks from Regions Bank on December 23, 2002, for the sums of $205,020.81 and $32,725;
5.  [H]is failure to deposit . . . [DeMon's] funds in a banking corporation pursuant to Section 93-13-17 as ordered by . . . [the chancery c]ourt on June 16, 2000;
6.  [H]is conversion of life insurance proceeds of $52,747.27 from the death of Rebecca Henry, . . . [DeMon's] mother;
7.  [H]is embezzlement of guardianship funds of approximately $235,000 through writing checks to himself or cash.

And Brown was again ordered to be incarcerated until he could purge himself of contempt by "depositing all funds of . . . [DeMon], for a total sum of $1,693,783.50 . . . ."[2]

¶9.  During the investigation into Brown, it appeared that McClinton and his girlfriend Campbell also may have mishandled guardianship funds; therefore, on April 16, 2012, twenty-seven-year-old DeMon filed his own petitions to compel an accounting by McClinton and Campbell.  In the special-master report filed on July 20, 2012, regarding McClinton's accounting of the guardianship funds, Rogers explained:

[McClinton] is obligated to account for $3,441,736.45.  We know that of this amount, $132,140.00 went to or for the benefit of Lottie Campbell,

---

[2] According to the Mississippi Department of Corrections web site, Brown is presently incarcerated serving a thirty year sentence for embezzlement.  *See* http://www.mdoc.state.ms.us/InmateDetails.asp?PassedId=185757 (as of November 24, 2014).  Brown's appeal of his conviction is pending as cause number 2013-TS-02080-SCT with the Mississippi Supreme Court.  Furthermore, Brown was disbarred from the practice of law by the supreme court on October 4, 2012, in *The Mississippi Bar v. Michael J. Brown*, 118 So. 3d 545 (Miss. 2012).  It is also of note that Brown admitted he did not maintain his professional liability coverage throughout this time.

7

> $595,000.00 went to Linus Shackelford, that at least $1,177,801.47 went to the benefit of DeMon, that $398,000.00 went to Michael Brown, that $79,293.13 was paid as a Guardian fee, that $1,600.47 went to Watkins Ludlum[,] and $11,420.35 went to Glover Russell. This leaves a remaining balance of $1,046,481.03 for which . . . McClinton has not fully and properly accounted.

Rogers also filed a special master-report on the accounting by Campbell. Rogers stated that Campbell's accounting reflects the purchase of three vehicles for her and her children, $50,000 from the alleged sale of eight residential properties to the guardianship, and $2,640 for tutoring payments for when she had tutored DeMon. These totaled $132,140, which Campbell should be obligated to repay. However, during his testimony on September 20, 2012, Rogers explained that "it came to light to myself for the first time today . . . that the purchase price to . . . Campbell . . . for those houses was not the $50,000 that we have been talking about, but was actually $150,000." Rogers asked that his report reflect that Campbell actually owed $232,140, which is $100,000 more than his initial report stated.

¶10. Following a hearing on September 20, 2012, the chancery court entered a final judgment finding Campbell liable to the guardianship in the amount of $232,140. Similarly, the chancery court entered a final judgment finding McClinton liable to the guardianship for $1,143,262 for funds for which he has been unable to account. McClinton was also found jointly liable for $232,140 owed by Campbell, and the $595,000 owed by Shackelford. The chancery court ordered McClinton and Campbell to appear at a later hearing to determine whether they had complied with the order. After the hearing on November 13, 2012, the chancery court found McClinton and Campbell in contempt for their failure to comply with the chancery court's September 20, 2012 order to repay the guardianship in the above

8

amounts. McClinton and Campbell were ordered incarcerated until they could purge themselves of the contempt by repaying the guardianship the owed monies. The chancellor stayed their incarceration upon their posting a valid bond and perfecting their appeals, which they did. McClinton and Campbell filed individual motions for relief from the judgment, both of which the chancery court denied.

¶11.   On appeal, Brown raises only two issues:

I.     [Whether t]he chancellor abused his discretion by entering an order to reopen the guardianship after the statute of limitations had run when the motion to reopen did not correctly plead fraud with the specificity required and there was no hearing to prove fraud by clear and convincing evidence[.]

II.    [Whether t]he chancellor abused his discretion by not recusing himself to avoid the appearance of impartiality in violation of [Mississippi Code of Judicial Conduct] Canon 3[.]

McClinton and Campbell raise the following issues on appeal:

I.     Whether the [chancery] . . . court erred in not granting . . . McClinton and . . . Campbell's motions to dismiss on the grounds that the petitions against them were filed more than five years after the minor, DeMon . . ., reached the age of twenty-one (in the case of petition concerning . . . McClinton) and more than three years after any cause of action accrued against . . . Campbell. Alternatively, the [chancery] court erred in not determining whether some of the monetary amounts or disbursements are barred by the statute of limitations due to the knowledge of the ward as to those expenses and/or disbursements.

II.    Whether the [chancery] . . . court abused its discretion in entering the final judgment finding . . . McClinton . . . in contempt of . . . court and [the] final judgment finding . . . Campbell in contempt of . . . court, affirming and imposing additional conditions on the final judgment against . . . McClinton and [the] final judgment against . . . Campbell, and the separate orders denying motion for relief [from] judgment, by not making specific findings of fact and conclusions of law as to the accounting for the proceeds and value of goods and services received

by DeMon . . . from . . . [McClinton and Campbell] and/or any unaccounted for or disbursed funds, and not giving any credit for any settlement from third parties, and . . . [McClinton and Campbell's] liability for any money that was embezzled and/or improperly obtained or disbursed by . . . [Brown] or . . . [Shackelford].

III. Whether the [chancery] . . . court abused its discretion in finding . . . [McClinton and Campbell] liable for the amounts claimed by holding them in contempt for nonpayment, without making any specific findings of fact or conclusions of law concerning the financial or other ability of [McClinton and Campbell] to pay the judgments against them, and whether the [chancery c]ourt abused its discretion in ordering indefinite jail time with a possible life sentence for contempt for essentially a civil debt[.]

IV. Whether the [chancery court] abused [its] discretion i[n] assigning as a monetary award and as an amount to be repaid to purge contempt against . . . Campbell due to her inability to pay, knowledge of the orders, lack of fiduciary relationship, and the value of goods transferred by the attorney of the guardianship to third parties.

## ANALYSIS

¶12. Due to the nature of the issues presented on appeal, we will address Brown's issues separately from McClinton and Campbell's issues.

### I. BROWN

¶13. At the outset, we note that the appellees did not file a brief in this case, and the failure to do so generally acts as a confession of error "unless the reviewing court can say with confidence, after considering the record and the brief of the appealing party, that there was no error. Automatic reversal is not required where appellee fails to file a brief." *Taylor v. Kennedy*, 914 So. 2d 1260, 1262 (¶2) (Miss. Ct. App. 2005) (internal citations omitted). Based upon our review of the record and Brown's brief, we can safely affirm the chancery court's judgment reopening the guardianship.

10

### A. Petition to Reopen the Guardianship

¶14. In his first issue, Brown asserts that the chancery court abused its discretion in allowing the guardianship to be reopened after the six-month time period for fraud under Rule 60(b) had run and in the absence of a petition pleading fraud with specificity.

¶15. "The decision to vacate a previous order under Rule 60(b) of the Mississippi Rules of Civil Procedure is a matter left to the sound discretion of the trial court, and the only question asked on appeal is whether there has been an abuse of that discretion." *Tirouda v. State*, 919 So. 2d 211, 213 (¶6) (Miss. Ct. App. 2005) (citing *Accredited Sur. & Cas. Co. v. Bolles*, 535 So . 2d 56, 58 (Miss. 1988)). Rule 60(b) provides:

> [T]he court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
>
> > (1) fraud, misrepresentation, or other misconduct of an adverse party;
>
> . . . .
>
> > (6) any other reason justifying relief from the judgment.
>
> The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than six months after the judgment, order, or proceeding was entered or taken. . . . This rule does not limit the power of a court to entertain an independent action to relieve a party from judgment, order, or proceeding, or to set aside a judgment for fraud upon the court.

¶16. In its 2012 judgment finding Brown in contempt, the chancery court explained that the accounting and motion to close the guardianship Brown filed in 2006 "were fraudulent in nature" and constituted a fraud upon the court. Also, the chancery court found that Brown's request for $398,000 in attorney's fees filed in 2001 was a fraud upon the court. "[W]e recognize that the trial court is best able to determine whether a fraud has been

11

perpetrated upon it. As a result, the chancellor's determination of the issue is entitled to great weight." *Tirouda*, 919 So. 2d at 216 (¶12).

¶17. A fraud upon the court falls within Rule 60(b)(6), the "catch all" provision, utilized only in exceptional and compelling circumstances. *Trim v. Trim*, 33 So. 3d 471, 475 (¶7) (Miss. 2010) (citations omitted). "Because Rule 60(b) relief based on fraud upon the court 'is reserved for only the most egregious misconduct,' a showing of 'an unconscionable plan or scheme which is designed to improperly influence the court in its decision' is required." *Tirouda*, 919 So. 2d at 216 (¶11). In the recent case of *Roberts v. Lopez*, 148 So. 3d 393, 399 (¶12) (Miss. Ct. App. 2014) (citation omitted), this Court stated that "a substantial misrepresentation of facts upon which a judgment is based is 'a fraud on the court, for which there is no limitation of time restricting the court from affording a remedy.'"

¶18. The case before us is also one of compelling circumstances such that equity and justice should entitle DeMon to Rule 60(b)(6) relief. Brown's accountings, which were relied upon by DeMon and the chancery court at various stages of the proceeding, including closing the guardianship, were factually insufficient; misleading at best; and failed to account for a very large portion of guardianship funds. Brown's deliberate actions to conceal guardianship assets and information from DeMon and the chancery court are such that Rule 60(b)(6) relief was appropriate.

¶19. It has been stated many times that the chancery court is the ultimate guardian of the minor ward. *See In re Conservatorship of Cole*, 958 So. 2d 276, 281 (¶15) (Miss. Ct. App. 2007) ("'The chancellor is the ultimate guardian of wards of the court.'"); *In re*

*Conservatorship of Bardwell*, 849 So. 2d 1240, 1246 (¶19) (Miss. 2003) ("We have held that the chancellor is the 'ultimate guardian' of wards."); *Jackson v. Jackson*, 732 So. 2d 916, 920 (¶5) (Miss. 1999) ("[T]he chancellor is the ultimate guardian of wards of the court . . . ."). The supreme court has held:

> Infants and persons of unsound mind are disabled under the law to act for themselves. Long ago it became the established rule for the court of chancery to act as the superior guardian for all persons under such disability. . . . The court will take nothing as confessed against them; will make for them every valuable election; *will rescue them from faithless guardians*, designing strangers, and *even from unnatural parents*, and in general will and must take all necessary steps to conserve and protect the best interest of these wards of the court.

*Carpenter v. Berry*, 58 So. 3d 1158, 1162-63 (¶19) (Miss. 2011) (emphasis added) (quoting *In re Conservatorship of Mathews*, 633 So. 2d 1038, 1039 (Miss. 1994)). It appears clear to this Court that when an attorney representing a court-appointed guardian, and the guardian himself, present a final accounting to the chancery court and petition to close the guardianship that they know, or should know with reasonable diligence, is false, deceptive, and motivated by a desire to conceal the theft of the ward's funds, a fraud has been committed upon the chancery court.

¶20. Ultimately, we find that the chancery court did not abuse its discretion in reopening the guardianship pursuant to Rule 60(b). This issue is without merit.

### B. Recusal

¶21. Brown's next argument is that the chancellor abused his discretion by not recusing in order to avoid the appearance of partiality due to the chancellor's personal relationship with Brent Hazzard, opposing counsel at that time. On appeal, we "apply the manifest-error

13

standard when reviewing a judge's refusal to recuse himself," while also acknowledging "that the law presumes the impartiality of the trial judge." *Sullivan v. Maddox*, 122 So. 3d 75, 81 (¶15) (Miss. Ct. App. 2013) (citing *Bredemeir v. Jackson*, 689 So. 2d 770, 774 (Miss. 1997)).

¶22.    The procedure for recusal of a chancellor is outlined in Uniform Chancery Court Rule 1.11, which provides:

> Any party may move for the recusal of a judge of the chancery court if it appears that the judge's impartially [sic] might be questioned by a reasonable person knowing all the circumstances, or for other grounds provided in the Code of Judicial Conduct or otherwise as provided by law.  A motion seeking recusal shall be filed with an affidavit of the party or the party's attorney setting forth the factual basis underlying the asserted grounds for recusal and declaring that the motion is filed in good faith and that the affiant truly believes the facts underlying the grounds stated to be true. . . .  The denial of a motion to recuse is subject to review by the [Mississippi] Supreme Court on motion of the party filing the motion as provided in [Mississippi Rule of Appellate Procedure] 48(B).

Mississippi Rule of Appellate Procedure 48(B) states:

> If a judge of the . . . chancery . . . court shall deny a motion seeking the trial judge's recusal . . . the filing party may within 14 days following the judge's ruling . . . seek review of the judge's action by the Supreme Court.  A true copy of any order entered by the subject judge on the question of recusal and transcript of any hearing thereon shall be submitted with the petition in the Supreme Court.

¶23.    Brown filed a motion for recusal on February 1, 2012, urging Chancellor Dewayne Thomas to recuse himself after Brown received a notice of disclosure from Hazzard that he and Judge Thomas ate lunch together often and attended collegiate sporting events together. Judge Thomas denied Brown's motion to recuse, and Brown then filed a "motion to stay order to deny motion to have judge recused and allow time for counsel to file an interlocutory

14

appeal with the Mississippi Supreme Court[.]"

¶24. After a careful review of the record, including Brown's motion for recusal, the attached exhibits, and the transcript of the hearing on Brown's motion for recusal, we can find no factual basis to conclude that the judge's impartiality "might be questioned by a reasonable person knowing all the circumstances[.]" Brown's motion was based on Hazzard's notice of disclosure that stated, in full: "Please take notice that Petitioner's attorney, Brent Hazzard, has disclosed that he and Judge Dewayne Thomas are friends that eat lunch and attend University of Mississippi [a]thletic [e]vents together." Simply put, there was no specific evidence presented beyond that statement as to Hazzard and Judge Thomas's personal relationship, such as the frequency they ate lunch together or attended sporting events together. Therefore, we find no merit to this claim.

¶25. Furthermore, we note that Brown failed to file an affidavit with his motion to recuse as required by Rule 1.11, failed to obtain a ruling from the chancery court on his motion to stay the proceedings, and failed to appeal the denial of his recusal motion through an interlocutory appeal to the supreme court pursuant to Rule 48(B).[3]

¶26. Therefore, for the above reasons, we find Brown's issue is without merit.

## II. MCCLINTON AND CAMPBELL

### A. Statute of Limitations

---

[3] In *Hathcock v. Southern Farm Bureau Casualty Insurance Co.*, 912 So. 2d 844, 848 (¶¶7-8) (Miss. 2005), the Mississippi Supreme Court noted that Rule 48(B) contains the following language: "[T]he filing party may within 14 days following the judge's ruling . . . seek review of the judge's action by the Supreme Court[,]" which is permissive language. Therefore, Brown's failure to seek an interlocutory appeal is not fatal to his claim and does not act as a bar to our review.

¶27. McClinton and Campbell first argue that the chancery court erred in not dismissing the cases against them because the statute of limitations, specifically Mississippi Code Annotated section 15-1-27 (Rev. 2012) as it relates to McClinton, and Mississippi Code Annotated section 15-1-49 (Supp. 2014) as it relates to Campbell, had already run on DeMon's claims. We find that, under the circumstances that will be outlined below, the statutes of limitations do not prevent the chancery court from correcting this fraud upon the court. Therefore, we affirm as to this issue.

¶28. Statute-of-limitations issues are questions of law, and receive a de novo review on appeal. *Lott v. Saulters*, 133 So. 3d 794, 798 (¶5) (Miss. 2014) (citing *Stephens v. Equitable Life Assurance Soc'y*, 850 So. 2d 78, 82 (¶10) (Miss. 2003)). Section 15-1-27 provides: "All actions against a guardian and the sureties on his bond, or either of them, by the ward, shall be commenced within five years next after the ward shall have arrived at the age of twenty-one years, and not after." Of note, the applications of section 15-1-27 have rarely been discussed and analyzed in our jurisprudence.

¶29. According to McClinton, DeMon did not initiate a suit against him until April 2012, over seven years after DeMon turned twenty-one; therefore, he claims section 15-1-27 barred the suit since it was filed more than five years after DeMon turned twenty-one. However, we find that McClinton's initiation of a suit in September 2009 to reopen the guardianship in order to investigate Brown and determine the whereabouts of guardianship money is sufficient to toll the statutes of limitations at issue here. McClinton's petition to reopen the guardianship and to be reappointed the guardian was, in essence, also an act by DeMon since

16

it was on his behalf as a ward, and it was filed within the five-year period provided in section 15-1-27.

¶30. In regard to Campbell's statute-of-limitations issue, section 15-1-49(1)-(2) provides, in pertinent part:

> (1) All actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after.

> (2) In actions for which no other period of limitation is prescribed and which involve latent injury or disease, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury.

It is clear from the record that the involvement of McClinton and Campbell in misusing DeMon's guardianship funds was not discovered until after the special master began investigating the guardianship in 2012. DeMon filed his petition against Campbell just a few months after discovering that Campbell potentially was involved in misusing his guardianship money; thus, his suit was properly within the statute of limitations.

¶31. Therefore, we find this issue to be without merit.

### B. Contempt

¶32. We will address McClinton and Brown's remaining issues in this section. In summary, McClinton and Campbell argue that the chancery court erred in finding them in contempt and for not investigating their abilities to pay or whether any credits/offsets were applicable. We affirm the chancery court's finding McClinton and Campbell in contempt; however, we reverse and remand for a determination of the correct amounts owed due to settlements and credits received and for a determination on their present abilities to pay.

17

¶33.    "[C]ontempt matters are committed to the substantial discretion of the chancellor . . .[, and this] Court will not reverse a contempt citation where the chancellor's findings are supported by substantial credible evidence. *Showers v. Norwood*, 914 So. 2d 758, 761 (¶11) (Miss. Ct. App. 2005) (citations omitted). The purpose of civil contempt is to compel parties to obey the orders of the court. *Jones v. Hargrove*, 516 So. 2d 1354, 1357 (Miss. 1987) (citation omitted). As a defense to a civil-contempt claim, a party can argue that the violation of the court's order was not willful or deliberate so as to be labeled "contumacious." *Dunaway v. Busbin*, 498 So. 2d 1218, 1222 (Miss. 1986). Another defense is the party's honest inability to perform according to the dictates of the order or decree; however, the defendant bears the duty to prove his inability with particularity and not in general terms. *Jones*, 516 So. 2d at 1357.

¶34.    On September 20, 2012, the chancery court ordered McClinton to pay $1,143,262 and Campbell to pay $232,140 to the guardianship within thirty days from the entry of the judgment. The chancery court held a hearing on November 13, 2012, regarding McClinton and Campbell's compliance with the order, or to show cause as to why they should not be incarcerated for their failure to comply. At the hearing, McClinton testified that he had been unable to secure a loan to repay his portion to the guardianship, and that he recently had retired as an apartment manager due to an illness. McClinton did explain that he owned some real estate that he would value at approximately $30,000, but that he had not yet tried to sell any of the properties. Additionally, he had a bank account with a balance of about $15,000, but did not have an individual retirement account or other tax-deferred account.

McClinton explained that he put the $79,293 he received for the guardianship fee into an annuity, from which he eventually withdrew everything. Additionally, he testified he paid $120,000 to DeMon's attorney in June 2012. On cross-examination, McClinton also admitted that he received close to $1,800 per month (depending on occupancy) from rental properties he bought with guardianship money and kept the deeds in his own name, but he did not pay any of the money back into the guardianship. He provided no testimony as to how he could repay over $1 million to the guardianship.

¶35. At the hearing, Campbell, sixty-seven years old at the time of the hearing and a retired public-school teacher, also testified that she attempted to get a loan, but was unsuccessful. According to Campbell, she received $730 for retirement benefits from the Public Employees' Retirement System per month and $917 in Social Security benefits per month; she has two checking accounts with balances of $2,500 and $300 respectively, and a savings account with a $9,000 balance. She owns her home and a rental property, which was not occupied at the time of the hearing. The rental property carried a $299 monthly mortgage payment, but her home was mortgage free. Campbell also could not provide any evidence or testimony of how she could repay the $232,000, but she indicated she would be willing and able to make small monthly payments toward the judgment.

¶36. The chancery court, unpersuaded by McClinton's and Campbell's testimonies, found both in contempt of its September 20, 2012 judgment and, as a sanction, ordered they be incarcerated "until such time until [they] repay . . . [DeMon's] money . . . or until further order of this [chancery c]ourt." McClinton and Campbell were permitted to post a bond and

19

file a notice of appeal in order to temporarily stay their incarceration. The chancery court made no specific findings as to McClinton's and Campbell's present abilities to repay the guardianship, thereby purging themselves of the contempt.

¶37. While we affirm the chancery court's finding that McClinton and Campbell were in contempt of the September 20, 2012 judgment that they repay the guardianship, because it is undisputed that they tendered no money to the guardianship, we are compelled to reverse and remand this issue to the chancery court for a recalculation of the total amounts each owes due to any settlements and credits that the guardianship has received. And upon recalculation, McClinton and Campbell may present evidence regarding their abilities to satisfy the judgments against them, keeping in mind that "[i]n the case of a civil contempt, if the defendant has been committed to prison he is entitled to be discharged on proof of inability to pay." *Jones*, 516 So. 2d at 1358. As the Mississippi Supreme Court noted in *Jones*, "[t]he result of Jones'[s] inability to pay may well be an unfortunate one, and this Court appreciates the frustration possibly experienced by the trial judge, but the fact remains that one cannot be imprisoned where the failure to pay is due to an inability to comply." *Id.* We emphasize that the sanction of imprisonment for civil contempt lies only when, based upon the facts apparent from the record, the contemnor has the ability to comply with the court's order, but willfully refuses. As we explained above, the purpose of civil contempt and sanctions is to compel compliance, not to punish for criminal wrongdoing. *See id.* at 1357.

¶38. Therefore, we reverse and remand for proceedings in the chancery court consistent

with this opinion.

¶39.    **THE JUDGMENT OF THE CHANCERY COURT OF HINDS COUNTY FINDING MICHAEL BROWN IN CONTEMPT IS AFFIRMED.  THE JUDGMENT OF THE CHANCERY COURT OF HINDS COUNTY FINDING THOMAS MCCLINTON AND LOTTIE CAMPBELL IN CONTEMPT IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.  ALL COSTS OF CAUSE NUMBER 2012-CA-00802-COA ARE ASSESSED TO THE APPELLANT AND ALL COSTS OF CAUSE NUMBER 2012-CA-1979-COA ARE ASSESSED TO THE APPELLANTS.**

   **LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, MAXWELL, FAIR AND JAMES, JJ., CONCUR.  CARLTON, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**