# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CA-01374-COA

NATASHA LEIGH HILTON                                                                    APPELLANT

v.

CHRISTOPHER JAMES HARVEY                                                          APPELLEE

DATE OF JUDGMENT:               08/25/2017
TRIAL JUDGE:                          HON. JOHN S. GRANT III
COURT FROM WHICH APPEALED:   RANKIN COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:        MICHAEL CHAD MOORE
ATTORNEY FOR APPELLEE:         JANICE T. JACKSON
NATURE OF THE CASE:             CIVIL - DOMESTIC RELATIONS
DISPOSITION:                      AFFIRMED - 11/05/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE J. WILSON, P.J., TINDELL AND LAWRENCE, JJ.

### TINDELL, J., FOR THE COURT:

¶1.     On December 31, 2012, the Rankin County Chancery Court granted Natasha Hilton and Chris Harvey an irreconcilable-differences divorce. On May 20, 2016, Natasha filed a petition to require Chris to sign a passport application for their minor children to be able to leave the United States with her on vacation. Chris filed his answer to Natasha's petition on September 20, 2016, as well as a counter-petition for contempt, modification of custody, and attorney's fees. The chancellor ultimately modified the couple's custody arrangement in favor of Chris, held Natasha in contempt of court, and awarded attorney's fees to Chris. Natasha now appeals to this Court, arguing that Chris failed to properly serve her with a copy of the Mississippi Rule of Civil Procedure 81 summons for his counter-petition until after

the 120-day deadline, in violation of Mississippi Rule of Civil Procedure 4.

¶2.     We find that this case, as a domestic-relations matter, is governed by Rule 81 rather than Rule 4.  Because Rule 81 has no 120-day deadline, we also find that service was not defective upon Natasha.  We therefore affirm the chancellor's judgment.

## FACTS AND PROCEDURAL HISTORY

¶3.     Natasha and Chris were married on June 11, 1984, and had two children from the marriage.  On December 31, 2012, the chancellor granted Natasha and Chris an irreconcilable-differences divorce.  In his final judgment of divorce, the chancellor referenced the couple's marital-dissolution agreement, wherein the couple agreed upon and were awarded joint legal custody of the two children.  A special custody provision was included in the agreement, allowing Natasha to have mid-week visits with one or more of the children while they were in Chris's custody.

¶4.     On May 20, 2016, Natasha filed a petition to require Chris to sign a passport application for their two children, which would allow her to take the children on vacation out of the country.  On May 24, 2016, Natasha issued a summons for the petition to be heard on June 27, 2016.  Chris claims that he was never served for this hearing, and no proof of service exists in the record.  Chris's counsel, however, entered an appearance on June 10, 2016.  At some point, the hearing was continued from June 27, 2016, to September 29, 2016.  Natasha claims that this continuance was agreed upon by the parties, but nothing in the record confirms this assertion.

¶5.     Natasha issued a new summons for the September 29 hearing on August 26, 2016, and Chris was served with the summons on August 27, 2016.  On September 20, 2016, Chris

filed an answer to Natasha's petition, as well as a counter-petition for contempt, modification of custody, and attorney's fees. That same day Chris filed a motion to continue the September 29 hearing. The parties ultimately agreed upon a hearing date of January 30, 2017. Natasha issued another summons upon Chris for the new hearing date on November 17, 2016, and Chris was properly served with the summons on the same day.

¶6. On December 5, 2016, Chris issued a summons for his counter-petition, but the summons was not served upon Natasha until January 24, 2017. The parties heavily dispute the reason for this delay. Natasha claims that Chris "didn't bother to have [her] served with the Rule 81 summons until January 24, 2017," which was 126 days after he filed his counter-petition. Chris, however, claims that "Natasha purposely avoided service of process until January 24, 2017," making the January 30 hearing untimely. In support of his claim, Chris submitted to the chancellor an affidavit signed by his process server, Tyler Miller, wherein Miller described his efforts to serve Natasha and Natasha's attempts to avoid service of process.

¶7. The parties agreed upon one final continuance of the case to July 18, 2017. Chris issued a second summons for the July 18 hearing, which was served upon Natasha on February 28, 2017. Chris claims that he issued this second summons to satisfy persistent complaints from Natasha's attorney and to avoid consequences of any potential misunderstanding.

¶8. At the hearing on July 18, 2017, Natasha argued that because Chris's counter-petition was filed on September 20, 2016, he was required by Rule 4(h) to serve Natasha with process within 120 days of filing the counter-petition. Natasha further argued that, because Chris

3

failed to do so, the chancellor lacked jurisdiction to hear the matter, and therefore, the case should be dismissed without prejudice. The chancellor disagreed, finding that (1) any defects in service of process on the part of Natasha or Chris were waived by the parties signing multiple agreed orders to continue the case, and (2) "because of the conflict and all [the parties'] different pleadings," Chris was granted an extension to serve Natasha nunc pro tunc[1] to cure any remaining defects in service of process.

¶9.    The chancellor proceeded to hear all matters relating to Natasha's petition to require Chris to sign the children's passport applications, which included Chris's counter-petition for contempt, modification of custody, and attorney's fees.  On August 25, 2017, the chancellor entered his final "judgment on the pleadings and motions filed since May 20, 2016."  In his final judgment, the chancellor granted Chris's counter-petition, finding that (1) Natasha was in contempt of the morals clause contained in the couple's final judgment of divorce; (2) the couple's custody arrangements should be modified to the extent that Natasha's mid-week visitations were suspended; and (3) Natasha was required to pay $2,000 in attorney's fees to Chris for frivolous claims she brought before the court.  Aggrieved, Natasha now appeals.

**STANDARD OF REVIEW**

¶10.    This Court does not disturb a chancellor's findings of facts "unless the chancellor's decision is manifestly wrong or unsupported by substantial evidence." *Bougard v. Bougard*,

---

[1] Nunc pro tunc means "[h]aving retroactive legal effect through [the] court's inherent power." Black's Law Dictionary, 1237 (10th ed. 2014). That is, the court may enter a judgment now which has the same legal effect as if the judgment had been made at the appropriate time prior to the judgment. *Id*. (citing George L. Phillips, *An Exposition of the Principles of Pleading Under the Codes of Civil Procedure* § 529, at 560 (1896)).

991 So. 2d 646, 648 (¶12) (Miss. Ct. App. 2008). "However, '[w]hen reviewing questions concerning jurisdiction, this court employs a de novo review.'" *Clark v. Clark*, 43 So. 3d 496, 499 (¶9) (Miss. Ct. App. 2010) (quoting *Sanghi v. Sanghi*, 759 So. 2d 1250, 1252 (¶7) (Miss. 2000)). Jurisdictional questions may include service of process. *Id*. at (¶11).

## ANALYSIS

¶11. On appeal, Natasha first argues that Chris failed to properly serve her with a Rule 81 summons related to his counter-petition for contempt, modification, and attorney's fees in violation of Rule 4(h). As such, Natasha contends that the chancellor lacked jurisdiction to enter his final judgment against her. Natasha further argues that the chancellor erroneously granted an extension to serve process in this case even though Chris failed to show good cause as to why he did not serve Natasha within 120 days. Chris argues, however, that Rule 81, rather than Rule 4(h), governs service of process in this matter and that the 120-day deadline is inapplicable here. Therefore, we must first address whether Rule 4(h) or Rule 81 applies to the foregoing case.

¶12. Mississippi Rule of Civil Procedure 4(h) states:

> If a service of the summons and complaint is not made upon a defendant *within 120 days* after the filing of the complaint and the party on whose behalf such service was required cannot show *good cause* why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion.

(Emphasis added). Rule 81(a)(9), however, states in pertinent part:

> Applicability in General. These rules apply to all civil proceedings but are subject to *limited applicability* in the following actions which are generally governed by statutory procedures, . . . [including] Title 93 of the Mississippi Code of 1972.

5

(Emphasis added). Title 93 of the Mississippi Code covers all matters related to domestic relations, including modifications of custody. *Roberts v. Lopez*, 148 So. 3d 393, 398 (¶9) (Miss. Ct. App. 2014). Rule 81(d) states that "[t]he special rules of procedure set forth in this paragraph . . . shall control to the extent they may be in conflict with any other provisions of these rules." Under Rule 81(d)(2), modification-of-custody-matters are triable within "7 days after completion of service of process in any manner other than by publication." Rule 81(d), however, places no 120-day deadline for service of process, as in Rule 4(h). Rather, Rule 81(d)(5) states only that

> upon the filing of any action or matter listed in subparagraphs (1) and (2) above, *summons shall issue commanding the defendant or respondent to appear and defend at a time and place, either in term or vacation, at which the same shall be heard.* Said time and place shall be set by special order, general order or rule of the court. If such action or matter is not heard on the day set for hearing, it may by order signed on that day be continued to a later day for hearing without additional summons on the defendant or respondent. The court may by order or rule authorize its clerk to set such actions or matters for original hearing and to continue the same for hearing on a later date.

(Emphasis added).

¶13. This Court specifically addressed the applicability of Rule 4(h) and Rule 81 to modification-of-custody matters in *Roberts*. In *Roberts*, a mother filed a complaint for fraud against the father of her child after the father allegedly forged her signature on a joint complaint for modification of custody, which gave him sole custody of the child. *Roberts*, 148 So. 3d at 397 (¶6). The mother later filed an amended complaint, which asked the chancellor to set aside all previous orders associated with the joint complaint or, in the alternative, to modify custody. *Id*. The mother served the father with a Rule 81 summons on the amended complaint, ordering his appearance for a hearing on the matter. *Id*. After

a hearing, the chancellor modified the couple's custody arrangement, giving the mother and father joint custody of the child. *Id*. at (¶7). The father appealed to this Court, arguing that the mother failed to serve him with the amended complaint within 120 days in violation of Rule 4(h). *Id*. at 398 (¶9).

¶14. In our analysis, this Court cited the Rule 81 procedures mentioned above as they related to the mother's custody-modification matters. *Id*. at (¶¶9-10). This Court found that as a domestic-relations matter Rule 81 controlled service of process in the mother's case, and not Rule 4(h). *Id*. at (¶10). We found specifically that because the father had been served with a Rule 81 summons commanding him to appear before the chancellor on the court-ordered hearing date, "it [was] of no moment" that the mother served the father with her Rule 81 summons more than 120-days after filing her complaint. *Id*. We ultimately affirmed the chancellor's modification of custody in this case. *Id*. at 402-03 (¶25).

¶15. Comparing the facts in *Roberts* with the facts before this Court today, we are obliged to apply the same holding to the case at hand. Similar to the mother in *Roberts*, Chris sought modification of his custody arrangement with Natasha, and therefore, the procedures in Rule 4(h) do not apply. Chris filed the counter-petition on September 20, 2016 and served Natasha with a Rule 81 summons on January 24, 2017, in compliance with Rule 81(d)(5). Natasha points out that Chris's Rule 81 summons noticed the hearing for January 30, 2017, which was six days after she had been served as opposed to seven days as required by Rule 81(d)(2). However, in accordance with Rule 81(d)(5), the chancellor properly ordered the hearing be continued to July 18, 2017, upon agreement of the parties.

¶16. We therefore find that Chris effectively served process upon Natasha in compliance

7

with Rule 81. Because we find service to be proper in this case, we need not address Natasha's remaining arguments regarding good cause and dismissal under Rule 4. We further find that the chancellor committed no error in hearing and ruling upon Chris's counter-petition.

## CONCLUSION

¶17. Because Rule 4(h) does not apply in custody-modification matters, such as this case, Chris properly served Natasha in accordance with the procedures mandated by Rule 81. We therefore find that the chancellor rightfully possessed jurisdiction over the matter, and we affirm his final judgment.

¶18. **AFFIRMED.**

> **BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR.**