CHANDLER, J.,
for the court.
¶ 1. This case comes to this Court on appeal from the Chancery Court of Hinds County, Mississippi. The chancellor granted limited visitation privileges to Ronald Wayne Fields (Wayne), holding that the detrimental influence Wayne had upon his minor son, Patrick, prevented the court from granting unrestricted, standard visitation privileges. Wayne now argues that the chancellor erred in limiting his visitation privileges where there was no evidence indicating that Patrick was in danger of being harmed while in Wayne’s custody. We agree, finding that the chancellor abused her discretion by limiting Wayne’s visitation privileges; therefore, we reverse and remand this case for further consideration.
FACTS
¶ 2. On August 3, 1998, Wayne and Angela Zuccaro Fields were granted a divorce in the Hinds County Chancery Court on the grounds of irreconcilable differences. The judgment granted primary custody of their only child, Patrick, to Angela and awarded Wayne certain limited visitation privileges, including four hour visitation periods every other Saturday and Sunday and additional four hour peri *1267 ods during Christmas, Thanksgiving, Easter, and Patrick’s birthday. The parties agreed to review the visitation agreements again in September 1999. However, when the time came to review the agreement, Angela refused to address Wayne’s requests, forcing Wayne to file a motion for contempt and modification of the previous visitation order.
¶ 3. On June 19, 2000, the chancellor conducted a hearing and approved a temporary agreement reached by the parties, awarding Wayne overnight visitation, from Saturday to Sunday, every other weekend. Additionally, the chancellor granted Wayne Thanksgiving visitation privileges. On December 9, 2000, . the matter was reconvened and, after considering the testimony of both parents, the chancellor awarded Wayne temporary standard visitation privileges, including alternate holiday visitation privileges. The chancellor also appointed Paul Davey to evaluate and identify any psychological or behavioral disorders that Patrick might have developed as a result of the divorce and the subsequent visitation schedules.
¶ 4. The matter resumed on May 2, 2001, following the completion of Davey’s evaluation of Patrick. During the hearing, the chancellor listened to several witnesses, including Davey who concluded that Wayne should be awarded standard visitation privileges. Nonetheless, the chancellor awarded Wayne limited visitation rights, confined to alternate weekends from five o’clock on Friday until six o’clock on Sundays. The chancellor refused to include any provisions regarding summer visitations or week-long extensions. Furthermore, the chancellor ruled that Wayne, during the time he had visitation privileges, would have to ensure that Patrick participates in any church related functions as determined by Angela. However, fearing that Angela might enroll Patrick in an excessive number of church activities so as to burden Wayne’s visitation privileges, the chancellor limited the number of activities to three. The chancellor concluded by emphasizing that Wayne’s visitation rights did not extend to any holidays.
LAW AND ANALYSIS
¶ 5. When confronted with issues pertaining to a visitation, the chancellor is granted broad discretion. Rogers v. Morin, 791 So.2d 815, 820(¶9) (Miss.2001). Accordingly, this Court will not reverse the chancellor’s decision unless it is not supported by substantial evidence found in the record. However, this Court will not hesitate to reverse a chancellor’s decision in cases where the decision is replete with manifest error or suggests that an abuse of discretion has occurred. Forsythe v. Akers, 768 So.2d 943, 949(¶ 17) (Miss.Ct. App.2000).
¶ 6. Our courts have adopted a policy of maintaining relationships between parents and their children even though the parent may be non-custodial. Dunn v. Dunn, 609 So.2d 1277, 1286 (Miss'.1992); Rayburn v. Rayburn, 749 So.2d 185, 187(¶ 3) (Miss.Ct.App.1999). As such, the non-custodial parent is reasonably entitled to more than limited and short periods of visitation. Mixon v. Mixon, 724 So.2d 956, 961(¶ 15) (Miss.Ct.App.1998). See also Crowson v. Moseley, 480 So.2d 1150, 1153 (Miss.1985) (noting that some holiday visitation, along with overnight weekend visitation privileges, is required as part of standard visitation). Restrictions on a non-custodial parent’s visitation privileges should only be ordered on a limited basis. As the Mississippi Supreme Court has stated, “there must be evidence presented that a particular restriction on visitation is necessary to avoid harm to the child before a chancellor may properly impose the re *1268 striction.” Harrington v. Harrington, 648 So.2d 543, 545 (Miss.1994). See also Dunn, 609 So.2d at 1286; Cox v. Moulds, 490 So.2d 866, 868 (Miss.1986). Absent evidence that standard visitation would likely cause actual harm to the child, the chancellor may not impose limitations on visitation and to do so represents both an abuse of discretion and manifest error. Harrington, 648 So.2d at 544.
¶ 7. In Harrington, the Mississippi Supreme Court reversed a chancellor’s decision to limit the visitation privileges of the non-custodial, natural father who had co-habitated with a woman without the benefit of marriage. Id at 547. The court reasoned that, despite the chancellor’s findings, there was no evidence in the record that the children were harmed or confused by their father’s cohabitation. Id. The court concluded that the likelihood of harm to the child must have a concrete, factual basis in order to overcome the presumption that the non-custodial parent is entitled to standard, unrestricted visitation privileges. Id.
¶ 8. This Court will follow the reasoning set out in Harrington, holding that absent evidence that the child is harmed by standard visitation, the chancellor may not impose limitations on the visitation privileges of the non-custodial parent. In the case sub judice, the chancellor determined that the evidence justified the limitation of visitation, even though she had previously granted Wayne standard visitation privileges through a prior order.
¶ 9. In her findings, the chancellor cited to the testimony of Patrick’s third grade teacher, Amy McKay and Abby McAdams, Patrick’s after-school caregiver. Angela called McKay and McAdams in an attempt to show that Patrick’s standard of behavior at school deteriorated around the weekends he was to spend with Wayne. According to McKay, Wayne’s influence over Patrick caused Patrick to become loud and combative. McKay stated that she has had to “call him down” for being rough with other children on the playground. Notwithstanding, McKay conceded that Patrick’s behavior was normal for a male child of his age. McAdams similarly testified that Patrick was more aggressive on the Fridays he was scheduled to spend with Wayne. However, unlike McKay, McAdams testified that she had not noticed any difference in Patrick’s behavior following his weekend visits with Wayne. Although it is possible that Patrick’s adolescent behavior can be linked to the visitations with Wayne, the evidence presented by McKay and McAdams fails to show a direct correlation. Moreover, we do not believe that Patrick’s isolated aggressive behavior at school can be considered a danger or substantial detriment, justifying the limitation of Wayne’s visitation. See Dunn, 609 So.2d at 1286. Therefore, standing alone, this testimony was not enough to overcome the presumption that Wayne was entitled to standard visitation.
¶ 10. The chancellor next alluded to the report and testimony provided by Paul Davey. However, contrary to the chancellor’s findings, neither Davey’s report nor his testimony concluded that Wayne should receive limited visitation. In actuality, Davey reached the opposite conclusion, stating that Wayne should receive standard visitation in order to instill some normalcy into Patrick’s life. Moreover, Davey testified that Patrick’s concerns about living with his father were unfounded and tied directly to the concerns Angela had about Wayne, indicating that Angela had caused Patrick to resent his father. Davey concluded that standard, not limited, visitation was necessary to help Patrick become closer to his father.
¶ 11. Lastly, the chancellor opined that Wayne lacked integrity. The chancellor re *1269 lied on Wayne’s own admission that, as the principal of a school, he had borrowed a football helmet owned by the Jackson Public School District and allowed Patrick to use it personally. According to the chancellor, this action, in conjunction with other abnormal behavior, demonstrated that Wayne was not in the position to be granted standard visitation privileges. Again, however, the chancellor failed to elucidate how Wayne’s action was detrimental to Patrick. In effect, it appears that the chancellor merely intended to punish Wayne for taking the football helmet by granting less than standard visitation. See Crowson, 480 So.2d at 1152 (noting that custody and visitation determinations are not to be used as punishment for prior actions taken by the non-custodial parent). Accordingly, we find that the chancellor erred in considering Wayne’s taking of the football helmet when deciding to limit Wayne’s visitation rights.
¶ 12. The evidence found in the record does not support the chancellor’s restriction on Wayne’s visitation with Patrick. We note that if the granting of standard visitation privileges had been detrimental to Patrick, the chancellor would not have awarded Wayne overnight visitation every other weekend. See Wood v. Wood, 579 So.2d 1271, 1273 (Miss.1991) (stating that the chancellor’s lack of reluctance in granting limited visitation can be used to infer that there would be no danger posed to the child under standard visitation). Likewise, prior to the final judgment, the chancellor did not hesitate in awarding Wayne standard summer and holiday visitation privileges. While the chancellor undoubtedly acted in the manner she believed most appropriate, her ultimate decision to grant limited custody and the basis for that decision was not supported by the record; therefore, this case is remanded to the chancellor for further consideration.
¶ 13. THE JUDGMENT OF THE CHANCERY COURT OF HINDS COUNTY IS REVERSED AND REMANDED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEE.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS AND BRANTLEY, JJ., CONCUR.