# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-CA-01601-SCT

*LAUREN BYRD (PHILLIPS) GATELEY*

*v.*

*CLAYTON HARRELL GATELEY*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/08/2013 |
| TRIAL JUDGE: | HON. PERCY L. LYNCHARD, JR. |
| TRIAL COURT ATTORNEYS: | TRACY B. WALSH |
| | ELIZABETH B. TREADWAY |
| | DEBRA PACE BRANAN |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | MARK A. CHINN |
| | MATTHEW THOMPSON |
| ATTORNEY FOR APPELLEE: | TRACY BUSTER WALSH |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 02/12/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DICKINSON, P.J., LAMAR AND CHANDLER, JJ.**

**LAMAR, JUSTICE, FOR THE COURT:**

¶1. After an irreconcilable-differences divorce, a chancellor awarded physical custody of two minor children to their father. The mother appeals, claiming the guardian ad litem's investigation was inadequate. Because we find the chancellor's decision was supported by substantial evidence, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.    Clayton Harrell Gateley and Lauren Byrd Phillips Gateley were married on October 11, 2006, and, on November 13, 2012, the parties consented to divorce on the ground of irreconcilable differences.  At the time of the divorce, the Gateleys had two children: a six-year-old son and a two-year-old daughter.  On January 14, 2013, the custody, property, and support issues were tried in DeSoto County Chancery Court.

¶3.    At trial, each party was represented by counsel and each party testified. The parties also called witnesses on their behalf.  Although there was some dispute over the parties' respective incomes and how the property should be divided, custody was the main focus of the proceeding.  Lauren and her witnesses generally testified that she was the better parent and that the children were happy and well-cared-for when they were with her; Clayton and his witnesses generally testified that he was the better parent and that the children were happy and well-cared-for when they were with him.

¶4.    Each party pointed to one main reason the other should not have custody.  Clayton claimed Lauren should not have custody because she suffered from trichotillomania, a nervous disorder characterized by the irresistible impulse to pull one's own hair.  The chancellor heard testimony that Lauren would spend several hours a day in the bathroom pulling her hair when she should have been watching the children, such as when they were bathing.  One witness testified that he had visited the Gateleys' home on multiple occasions and had observed Lauren spending most of the evening in the bedroom while Clayton took care of the children.

¶5.     Lauren admitted having trichotillomania but claimed it was under control and did not inhibit her ability to care for her children. Lauren had sought treatment for the condition nearly a decade before, and had been prescribed medication but had quit taking it. According to her, the disorder impacted only her physical appearance—due to hair loss—and she managed that by wearing a wig.

¶6.     Lauren claimed Clayton should not be awarded custody because he abused alcohol. She testified that Clayton would routinely begin drinking before he left work, would drive home while drinking beer, would arrive home drunk, and would drink the rest of the evening. Clayton's parents also drank regularly and kept a keg of beer in the house at all times. Lauren claimed, and Clayton disputed, that Clayton would at times have a cooler of beer in his truck and drink while driving, sometimes with the children in the vehicle. None of Lauren's witnesses had seen Clayton abuse alcohol or drive impaired.

¶7.     Clayton admitted to drinking beer but claimed it was mostly on the weekends when he did not have the children,[1] and it was never to the point of intoxication. Clayton's mother testified that Clayton "absolutely [did] not" drive with the children when he had been drinking. Clayton's employee testified that he had never seen Clayton drive while intoxicated, and that Clayton did not drink while at work. On cross-examination, Lauren conceded that, despite her claims about Clayton's drinking and driving with the children, she still asked him to pick up the children from school and daycare some days when she had to work late. This had occurred even on weeks when Lauren had custody of the children. At

_____

[1]The parties had been separated for more than a year before the divorce. During that time, each had parent had the children every other week.

3

the conclusion of testimony, the chancellor conducted an on-the-record ***Albright*** analysis.[2]

***Albright v. Albright***, 437 So. 2d 1003 (Miss. 1983). The chancellor found that two factors favored Lauren, two factors favored Clayton, and the rest favored neither party.

¶8. The first factor, the age and sex of the children, favored Lauren, particularly because of the tender age of the youngest child. The best-parenting-skills factor favored Lauren as well, because she was primarily in charge of rearing the children in their young, tender years. The chancellor noted that this issue was a close one, though, because as the oldest child got older, Clayton became very involved and "revealed his parenting skills."

¶9. Two factors favored Clayton: physical and mental health of the parents, and the stability of the home environment. The chancellor found both parents to be physically healthy, but found Clayton mentally healthier because Lauren suffered from trichotillomania, which "caused a problem in the amount of time which she would ordinarily spend with the children . . . ." Clayton's home was the more stable of the two because he still lived in the

---

[2]The ***Albright*** factors are:

> 1) [the] age, health and sex of the child; 2) [a] determination of the parent that had the continuity of care prior to the separation; 3) which [parent] has the best parenting skills and which has the willingness and capacity to provide primary child care; 4) the employment of the parent and responsibilities of that employment; 5) [the] physical and mental health and age of the parents; 6) [the] emotional ties of parent and child; 7) [the] moral fitness of parents; 8) the home, school and community record of the child; 9) the preference of the child at the age sufficient to express a preference by law; 10) [the] stability of [the] home environment and employment of each parent; and 11) other factors relevant to the parent-child relationship.

***Brekeen v. Brekeen***, 880 So. 2d 280, 283-284 (Miss. 2004).

house in which the children grew up, while Lauren had moved twice since the separation and now lived with her boyfriend, who had two children of his own.

¶10.     Noting that each parent had two factors in their favor, the chancellor explained "this is not a scoring contest.  It must be considered in the overall circumstances in which the parents and children find themselves."  After considering "the totality of the circumstances and examining those factors accordingly," and finding both parties "fit, proper and suitable parents," the chancellor awarded Clayton custody of the son and awarded Lauren custody of the daughter.  This unusual arrangement, he explained, would only be temporary, until an investigation could be conducted and a custody determination finalized.

¶11.     The chancellor then appointed Debra Branan as guardian ad litem, explaining that "[s]he will conduct an investigation, and . . . she will have between now and the 4th day of March of 2013 to investigate the homes and conditions of the parties."[3]  The other issues were finalized with minimal dispute, and the court adjourned.  The order appointing Branan stated she "shall conduct an investigation of the parties and the current custody arrangement and shall report to the Court her recommendations as to whether or not custody should remain as ordered or should be altered and in what manner."

¶12.     On March 4, 2013, Branan gave the chancellor her recommendation at a final hearing.  Both parties were present and represented by counsel.

¶13.     Branan first testified that, although she had faxed signed medical releases to Lauren's physicians several times, she had been unable to obtain Lauren's medical records.  Next, she

---

[3]We note that, in this circumstance, no statute required the appointment of a guardian ad litem.

5

testified that she had investigated Lauren's allegations that Clayton was not adequately seeing to the educational needs of the six-year-old boy. According to her, those complaints were unfounded: "In fact, the times in which [Lauren] complained that [Clayton] was not getting [the child] to school on time, the tardies actually turned out to be times when [Lauren] had the children."

¶14. Branan continued: "I've spoken with various people or had people from my office speak with various people and feel that we have done as extensive of an investigation as could be." She had investigated Lauren's allegations that Clayton had been arrested on multiple occasions, but had not obtained arrest records from those instances.

¶15. She further testified that she had observed the children together, and that they were "both very affectionate and loving children," and that her preference was to keep the children together. She noted that the temporary custody arrangement implemented after the trial—each parent having custody of one child—was "an extraordinary decision," and that she took that fact, along with the fact that she was not at the trial, into account when making her recommendation.

¶16. Finally, Branan recommended that if the court did not leave the children divided between the parents, they both should be with Clayton. The chancellor clarified the recommendation, asking, "based upon your investigation and your talks with the children, parents, and whoever, is your recommendation that the children be together with the father in the best interest over and above the splitting of them?" Branan confirmed that was her recommendation.

¶17.  The chancellor asked both Clayton's and Lauren's attorneys if they wanted to ask Branan anything while she was on the stand.  Both said they did not.  Before adjourning, the chancellor again asked the attorneys if they had anything else to say, and, again, both declined.

¶18.  On March 8, 2013, the chancellor entered an order awarding full physical custody to Clayton and giving Lauren "as much mutually agreeable visitation as possible, but not less than [a specified weekend and holiday visitation schedule]."  Lauren filed a motion to reconsider, which the chancellor denied.  Lauren timely appealed.

## STANDARD OF REVIEW

¶19.  This Court applies a limited standard of review in child-custody cases.  *Floyd v. Floyd*, 949 So. 2d 26, 28 (Miss. 2007).  "Reversal only occurs if a chancellor is manifestly wrong, or applied an erroneous legal standard."  *Id.* (citing *Powell v. Ayars,* 792 So. 2d 240, 243 (Miss. 2001)).  This Court's "decisions have always stated the cardinal principle to be applied to custody decisions is that which is in the best interests and welfare of the minor child."  *Albright*, 437 So. 2d at 1004 (citing *Brown v. Brown*, 112 So. 2d 556 (Miss. 1959)).  Further, we must affirm the chancellor's findings of fact if they are "supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous or an erroneous legal standard was applied."  *Hollman v. Hollman*, 691 So. 2d 897, 898 (Miss. 1996) (citing *Mount v. Mount*, 624 So. 2d 1001, 1004 (Miss. 1993)).

## ANALYSIS

¶20.  On appeal, Lauren argues that the custody order should be vacated because of perceived shortcomings in Branan's investigation.  Specifically, she argues that Branan did

7

not provide a written report, conduct a home study, interview the parties with the children, interview Lauren personally, interview all of the witnesses provided by Lauren, or investigate Lauren's claims that Clayton abused alcohol.[4]

¶21.   We find it unnecessary to pass on the question of whether Branan's investigation was lacking.  Because, even assuming for purposes of argument that Branan's investigation was woefully inadequate—as Lauren argues—we still would affirm the chancellor.  As stated above, the "cardinal principle" in custody decisions is what is in the "best interests and welfare of the minor child."  Once a chancellor has decided what is in a minor's best interests, we will not overturn that decision—provided it is based on substantial evidence—unless it is clearly erroneous.  After careful review, we find that the chancellor's decision here is supported by substantial evidence and is not clearly erroneous.

¶22.   This Court previously has held: "In any case where a [guardian ad litem] is appointed to represent a child, the chancellor's role as fact-finder requires the evidence presented by the [guardian ad litem], as well as all other relevant evidence, to be considered and given such weight *as the chancellor determines it deserves* . . . .Thus the question to be answered by this Court is . . . *whether the evidence in the record support the chancellor's decision*."

_____

[4]As noted above, Lauren declined to cross-examine Branan and failed to make any contemporaneous objections.  However, these issues are preserved for appeal because of their bearing on the best interests of the minor children involved.  **Natural Father v. United Methodist Children's Home**, 418 So. 2d 807, 809 (Miss. 1982) (Explaining that in "case[s] where the basic issue involves the rights and destiny of small children" this Court relaxes "[t]he general rule . . . that questions not raised at the trial level will not be considered . . . as grounds for reversal").  And we also note that, strictly speaking, Lauren raised these "at the trial court level" in her motion to reconsider, which the chancellor denied on its merits.

*Lorenz v. Strait*, 987 So. 2d 427, 431 (Miss. 2008) (citing *Yates v. Yates*, 284 So. 2d 46, 47 (Miss. 1973)) (emphasis added).

¶23. As noted above, the chancellor discussed each *Albright* factor individually and specifically. In doing so, he made several findings of fact that provide support for his ultimate custody determination. Among those, that Clayton offered the more stable home, that Clayton was mentally healthier than Lauren, and that Lauren had moved twice and lived in a four-bedroom house with her boyfriend and his two children.

¶24. Our law does not mandate that the chancellor follow a guardian ad litem's recommendation, because the chancellor, "not the guardian ad litem, is the ultimate finder of fact." *S.G. v. D.C.*, 13 So. 3d 269, 282 (Miss. 2009) (citing *Hensarling v. Hensarling*, 824 So. 2d 583, 587 (Miss. 2002)). The chancellor made this clear to the parties when he explained that he would "listen to [Branan's] recommendation and may very well accept her recommendation, reject her recommendation, do something totally different, or leave it the way it is."

¶25. In short, the chancellor properly fulfilled his role as factfinder by considering Branan's oral report and her recommendation, along with all the other relevant evidence, and determining how much weight it deserved. *See Hensarling*, 842 So. 2d at 587. *See also S.N.C. v. J.R.D.,* 755 So. 2d 1077, 1082 (Miss. 2000) ("The guardian ad litem's presence . . . in no way detracts from the chancellor's duty to hear the evidence and make a decision on all of the evidence, not just on the testimony of the guardian ad litem."); *S.G.*, 13 So. 3d at 282 ("Recommendations of a guardian ad litem must never substitute for the duty of a chancellor.").

¶26. Moreover, this Court will uphold a chancellor's custody order even if it is partly based on a less-than-perfect guardian-ad-litem investigation. *See White v. White*, 26 So. 3d 342 (Miss. 2010). In *White*, the chancery court modified a custody order in favor of a father, and when the mother appealed, this Court affirmed. *Id.* at 352. The chancellor considered a guardian ad litem's recommendation, even though the guardian ad litem had not conducted a court-ordered home study (or otherwise visited the mother's home), and had not reviewed all the records she had sought from the mother. In affirming the judgment of the chancery court, this Court did not even address the arguments about the guardian ad litem's recommendation, explaining that "[o]n appeal, we cannot reweigh the evidence and must defer to the chancellor's findings of the facts, so long as they are supported by substantial evidence." *Id.* at 352.

## CONCLUSION

¶27. In a custody determination, *Albright* requires the chancellor to weigh certain factors and to base his determination on substantial evidence. And, although a chancellor may appoint a guardian ad litem and consider her recommendation, he is not required to do so. Here, the chancellor's decision was supported by substantial evidence, and we therefore affirm.

¶28. **AFFIRMED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., KITCHENS, CHANDLER, PIERCE, KING AND COLEMAN, JJ., CONCUR.**