# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-00929-COA

**DANIEL W. MICHAEL**                                    APPELLANT/CROSS-
                                                          APPELLEE

v.

**KELLIE MICHELLE SMITH**                               APPELLEE/CROSS-
                                                          APPELLANT

DATE OF JUDGMENT:          05/20/2016
TRIAL JUDGE:               HON. MICHAEL H. WARD
COURT FROM WHICH APPEALED: JONES COUNTY CHANCERY COURT,
                           SECOND JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT:    SHAWN M. LOWREY
ATTORNEY FOR APPELLEE:     BARRON CRUZ GRAY
NATURE OF THE CASE:        CIVIL - DOMESTIC RELATIONS
DISPOSITION:               AFFIRMED IN PART; REVERSED AND
                           REMANDED IN PART: 01/09/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**GRIFFIS, P.J., FOR THE COURT:**

¶1.     Daniel W. Michael appeals the chancellor's entry of a child-visitation schedule that set visitation every other weekend from Saturday through Sunday. Michael argues the chancellor erred by not granting standard visitation of Friday through Sunday, and by imposing on him all costs and travel associated with the visitation. Kelli Michelle Smith, the child's mother, cross-appeals and argues that because Michael's post-trial motion was untimely, the chancellor lacked jurisdiction to rule on the motion and his appeal should therefore be dismissed, as it stems from a void judgment.

¶2.    We find Michael's appeal is properly before this Court and that the chancellor correctly imposed all costs and travel expenses on Michael, but abused his discretion in restricting visitation. Thus, we affirm in part, and reverse and remand in part.

FACTS

¶3.    E.M.S.[1] was born to Michael and Smith in August 2013. Michael and Smith were never married. They lived in Laurel, Mississippi, at the time of E.M.S.'s birth. However, by the time this action commenced, Michael had moved to Louisiana. On March 11, 2015, Smith filed a petition in the Jones County Chancery Court to adjudicate paternity and establish custody, support, and visitation. Smith attached a DNA test, dated August 2013, that showed Michael is E.M.S.'s father.

¶4.    On June 22, 2015, a temporary hearing was held on Smith's petition. The parties stipulated that Michael was E.M.S.'s father. On July 16, 2015, the chancellor entered a temporary order, granting Smith legal and physical custody of E.M.S. Michael was granted two-hour supervised visitations twice each week in Laurel. Smith was ordered to supervise the visitations while E.M.S. became acclimated with Michael. Michael was ordered to pay child support and the child's health insurance.

¶5.    A trial was held on September 2, 2015, and a final judgment was entered on January 15, 2016. Smith was granted legal and physical custody of E.M.S., and a progressive visitation schedule was set for Michael. The chancellor found that due to the lack of bonding

_____

[1] Initials are substituted for privacy of the minor child.

2

between Michael and E.M.S., Michael was to have visitation, supervised by Smith, beginning on November 28, 2015, on every second and fourth Saturday of each month at Smith's home or other place in Jones County designated by Smith from 10 a.m. to 12 p.m. Beginning on January 9, 2016, the visitation time was expanded from 10 a.m. until 5 p.m. on every second and fourth Saturday, and was to be unsupervised; but visitation was to occur in Jones County. Beginning on April 9, 2016, the visitation was to be unsupervised from 10 a.m. on Saturday until 5 p.m. on Sunday, every second and fourth weekend, in Jones County.

¶6.     Additionally, Michael was ordered to pay an agreed-upon amount of child support and back child support. Michael was also ordered to pay certain child-care expenses and all of Smith's attorney's fees. All provisions of the temporary order not inconsistent with the final judgment were incorporated into the final judgment.

¶7.     On January 25, 2016, ten days after the final judgment, Smith filed a Mississippi Rule of Civil Procedure 59(e) motion for reconsideration. Smith sought: (1) the imposition of a specific deadline for Michael to pay the back child support; and (2) a ruling on the payment of health insurance and medical expenses, which were addressed in the temporary order but not the final judgment.

¶8.     On January 28, 2016, thirteen days after the final judgment, Michael filed a motion for relief from judgment under Mississippi Rule of Civil Procedure 60(b)(2) and (b)(6). Michael argued that the chancellor improperly restricted visitation and failed to set any holiday visitation. The motion states that counsel had mailed a Rule 59(e) "Motion to Alter

3

or Amend" to the chancery clerk on January 21, 2016, but for "reasons beyond the knowledge of counsel," the motion was not received by the clerk.

¶9. Smith subsequently responded to Michael's motion for relief from judgment and argued that the motion failed to clearly state the relief sought and, thus, was not a proper Rule 60(b) motion. Smith claimed that Michael's motion was, on its face, a Rule 59(e) motion to alter or amend the judgment, which was required to be filed within ten days of the entry of the final judgment. Since the motion was filed thirteen days after the entry of the final judgment, Smith argued Michael's motion was time-barred.

¶10. On April 18, 2016, the chancellor held a hearing on the post-trial motions. At the outset of the hearing, Smith immediately moved to withdraw her motion for reconsideration, saying that all claims in the motion had been "worked out between the parties." Thus, the hearing proceeded only on Michael's motion for relief from judgment. The parties presented arguments on whether the motion was one under Rule 59 or 60, with the chancellor ultimately telling Michael to present both motions.

¶11. On April 20, 2016, the chancellor sent the parties a letter, stating that Michael's motion would be granted, "subject to [certain] provisions." The chancellor incorrectly stated that he believed Michael's post-trial motion—filed thirteen days after the entry of the final judgment—was a timely Rule 59(e) motion, since Mississippi Rule of Civil Procedure 6(e) allows three additional days to respond to documents served by mail.[2] As to the final

---

[2] Rule 6(e) does not expand the time for filing a Rule 59(e) motion. The Mississippi Supreme Court has repeatedly held that a motion under Rule 59(e) *must be filed* within ten

4

judgment, the chancellor stated that, "[c]learly, [he] erred" when he "restricted [Michael's] visits to Jones County . . . and failed to address other visitation to which [Michael] was entitled."

¶12.    On May 27, 2016, the chancellor entered an amended judgment on the parties' post-trial motions.  The chancellor denied Smith's Rule 59 motion as moot, since it had been withdrawn.  Additionally, the chancellor granted Michael unsupervised visitation, not limited to Jones County, every other weekend from 10 a.m. on Saturday through 5 p.m. on Sunday, and set a standard holiday- and summer-visitation schedule.  Michael was ordered to be responsible for the costs and transportation associated with visitation.  All other portions of the final judgment not dealing with visitation remained in effect.

¶13.    On June 22, 2016, Michael filed a notice of appeal.  On appeal, Michael raises two issues: (1) the chancellor abused his discretion in ordering visitation from Saturday through Sunday rather than Friday through Sunday; and (2) the chancellor abused his discretion in ordering Michael to be responsible for all costs and travel for visitation.  Additionally, Smith raises two issues on cross-appeal: (1) the chancellor lacked jurisdiction to rule on Michael's Rule 59(e) motion, as it was untimely; and (2) Michael's appeal should be dismissed, as it

---

days of the entry of the final judgment. *See S. Healthcare Servs. Inc. v. Lloyd's of London*, 110 So. 3d 735, 741 (¶14) (Miss. 2013) (stating a Rule 59(e) motion must be filed within ten days of the final judgment); *City of Jackson v. Jackson Oaks Ltd. P'ship*, 792 So. 2d 983, 985 (¶¶2-3) (Miss. 2001) (finding a Rule 59(e) motion filed twelve days after the final judgment was untimely and must be treated as a Rule 60(b) motion); *Taylor v. Morris*, 609 So. 2d 405, 407 (Miss. 1992) (finding that a Rule 59(e) motion filed eleven days after the final judgment was timely only because the tenth day fell on a Sunday).

stems from a void judgment.

ANALYSIS

*Smith's Cross-Appeal*

¶14.    We first address Smith's cross-appeal, as it questions the chancellor's jurisdiction to enter the amended judgment and attacks the validity of Michael's notice of appeal.  Smith argues that the chancellor erroneously considered Michael's Rule 59(e) motion, and, consequently, the amended judgment is void, and this appeal should be dismissed.  Smith's argument raises a question of law, which we review de novo.  *In re M.I.*, 85 So. 3d 856, 857 (¶6) (Miss. 2012).

¶15.    "The Mississippi Rules of Civil Procedure provide two avenues to move the trial court to reconsider its judgment.  The aggrieved party may (1) file a motion for a new trial or to alter or amend under Rule 59 or (2) file for a relief from a final judgment under Rule 60(b)." *Loftin v. Jefferson Davis Cty. Sch. Dist.*, 142 So. 3d 1098, 1100 (¶5) (Miss. Ct. App. 2014). "The timing of the motion to reconsider determines whether it is a Rule 59 or Rule 60(b) motion."  *Id.*  A Rule 59(e) motion must be filed within ten days of the entry of the final judgment.  M.R.C.P. 59(b).  This deadline cannot be extended.  M.R.C.P. 6(b).  A motion to reconsider filed after the ten-day deadline is a Rule 60(b) motion.  Motions filed under the reasons set out in Rule 60(b)(1)-(6) must be filed within a reasonable time, and for motions filed under subsections (1)-(3), within six months.

¶16.    The record shows that although Michael attempted to file a Rule 59(e) motion, it was

6

never received by the chancery clerk. When Michael discovered that his motion had not been filed, the ten-day deadline had passed, and Michael abandoned his attempt to seek relief under Rule 59(e). Instead, he filed a Rule 60(b) motion.

¶17. In support of her argument that the chancellor erroneously ruled on the untimely Rule 59(e) motion and not the Rule 60(b) motion, Smith cites the chancellor's letter to counsel sent after the post-trial-motions hearing, which states that the chancellor considered Michael's Rule 59(e) motion to be timely and well taken. However, this statement does not appear in the chancellor's amended judgment, nor was it otherwise incorporated into the amended judgment. Rather, the amended judgment states that the chancellor "reviewed [Michael's] post-trial motion"—without specifying which one—and "finds it well taken[.]"

¶18. The chancellor's statement in the letter and Smith's argument do not acknowledge that Michael's January 28, 2016 Rule 60(b) motion was the *only* post-trial motion that Michael actually filed. While the Rule 59(e) motion was attached to the Rule 60(b) motion, Michael acknowledged that the Rule 59(e) motion was never filed, and he did not move to extend the time for filing it, as the chancellor would not have been permitted to grant such relief. *See* M.R.C.P. 6(b) (stating that the time to file a Rule 59(e) motion may not be extended).

¶19. Michael's Rule 60(b) motion sought relief from judgment under subsections 60(b)(2) and (6). Rule 60(b)(2) provides for relief from a final judgment for accident or mistake, and Rule 60(b)(6) provides for relief from a judgment for "any other reason . . . justifying relief" not set out in Rule 60(b)(1)-(5). A Rule 60(b)(2) motion must be filed within "a reasonable

7

time" within six months of the final judgment, and a Rule 60(b)(6) motion must be filed within "a reasonable time."

¶20. The record shows Michael's Rule 60(b) motion was filed within a reasonable time, as it was filed thirteen days after the final judgment. Since Michael's Rule 60(b) motion was timely filed, the chancellor had jurisdiction to consider it and thereafter enter the amended judgment. As the trial court's amended judgment on Michael's timely Rule 60(b) motion was not a void judgment, Michael's appeal is properly before this Court, and Smith's cross-appeal is without merit.

*Michael's Appeal*

### I.      *Visitation Schedule*

¶21. Michael first argues the chancellor erred in limiting his weekend visitation from Saturday through Sunday, rather than Friday through Sunday.[3]

¶22. "The chancellor has broad discretion when determining appropriate visitation and the limitations thereon." *Harrington v. Harrington*, 648 So. 2d 543, 545 (Miss. 1994). The

---

[3] Smith did not respond to Michael's arguments on appeal; rather, her brief only raises issues concerning jurisdiction. Smith does not challenge the chancellor's grant of Michael's Rule 60(b) motion; thus, we only address Michael's issues regarding the substance of the amended judgment. We also note that although Smith failed to respond to the arguments in Michael's appellant's brief, we do not consider her failure to do so as a confession of error. As our supreme court has explained, the failure to respond to the issues raised on appeal "is ordinarily treated as a confession of error, *except where a child's interests are concerned*. In those instances, this Court makes a special effort to review the record for support to affirm." *Doe v. Smith*, 200 So. 3d 1028, 1032 n.12 (Miss. 2016) (emphasis added) (citing *Barber v. Barber*, 608 So. 2d 1338, 1340 (Miss. 1992); *Sparkman v. Sparkman*, 441 So. 2d 1361 (Miss. 1983)).

chancellor's findings of fact will be affirmed when supported by substantial evidence, unless the chancellor abused his discretion or applied an incorrect legal standard, or if the decision was manifestly wrong or clearly erroneous. *Gateley v. Gateley*, 158 So. 3d 296, 300 (¶19) (Miss. 2015). Unlike a petition for modification of child custody, alteration of a visitation schedule does not require a showing of a material change in circumstances in the custodial home. *Mabus v. Mabus*, 847 So. 2d 815, 818 (¶8) (Miss. 2003). Instead, the chancellor must consider "the best interest of the child as his paramount concern," and "the rights of the non[]custodial parent, recognizing the need to maintain a healthy, loving relationship between the non[]custodial parent and his child." *Harrington*, 648 So. 2d at 545.

¶23. In support of his argument, Michael relies on *Fields v. Fields*, 830 So. 2d 1266 (Miss. Ct. App. 2002). In *Fields*, the chancellor awarded the father visitation every other weekend from 5 p.m. on Friday until 6 p.m. on Sunday. *Id.* at 1267 (¶4). However, the chancellor awarded no holiday or summer visitation, and required that the father ensure that the child participated in up to three church activities chosen by the mother during his weekend visitations. *Id.*

¶24. On appeal, this Court found no basis in the record for the chancellor's imposition of these restrictions on visitation. *Id.* at 1269 (¶12). In so finding, this Court first pointed to the chancellor's award of overnight visitation, which created an inference that standard visitation was not detrimental to the child. *Id.* Further, this Court noted that in the temporary order entered prior to the final judgment, the chancellor "did not hesitate in awarding . . .

9

standard summer and holiday visitation privileges." *Id.* There was no evidence that anything had changed since the temporary order, or that summer and holiday visitation were in any way detrimental to the child. *Id.*

¶25. Here, as in *Fields*, there is no indication that standard visitation would be detrimental to the child. *See id.* The chancellor awarded Michael overnight visitation and further awarded standard summer- and holiday-visitation privileges. While the chancellor did not place the same restrictions at issue in *Fields*, he did in fact restrict Michael's visitation, as Michael's weekend visitations did not include Friday.

¶26. "Except in unusual circumstances, a noncustodial parent is entitled to unrestricted standard or liberal visitation." Deborah H. Bell, *Bell on Mississippi Family Law* § 5.08[2] (1st ed. 2005) (citing *Cox v. Moulds*, 490 So. 2d 866, 870 (Miss. 1986)). Standard visitation includes "two weekends a month until Sunday afternoon and at least five weeks of summer visitation[,] plus some holiday visitation." *Id.* (citing *Messer v. Messer*, 850 So. 2d 161, 167 (¶22) (Miss. Ct. App. 2003); *Fields*, 830 So. 2d at 1269 (¶12); *Chalk v. Lentz*, 744 So. 2d 789, 792 (¶9) (Miss. Ct. App. 1999)). "Awarding less is an abuse of discretion unless there is concrete proof of actual harm to a child." *Id.* "Appropriate visitation restrictions often relate to abusive behavior, drug or alcohol abuse, or mental illness." *Id.* at § 5.08[4].

¶27. Here, there is no evidence of actual harm to E.M.S., nor is there evidence of abusive behavior, drug or alcohol abuse, or mental illness by Michael. Instead, the chancellor found Michael's lack of bonding with E.M.S. as the reason to restrict Michael's visitation.

10

However, such restriction seems counterproductive. Indeed, it is unclear how limiting visitation between Michael and E.M.S. would strengthen the parent-child bond. Moreover, the record shows that at the time of the amended judgment, Michael had been "bonding" with E.M.S. for at least four hours per week for almost one year.

¶28. "Our courts have adopted a policy of maintaining relationships between parents and their children even though the parent may be non-custodial." *Fields*, 830 So. 2d at 1267 (¶6).

> The best interests of the minor child should be the paramount consideration . . . while respecting the rights of the noncustodial parent and the objective of creating an environment conducive to developing as close and loving a relationship as possible between parent and child.

*Bell on Mississippi Family Law* at § 5.07[1] (quoting *Chalk,* 744 So. 2d at 792 (¶9)).

¶29. "[A]bsent evidence that the child [would be] harmed by standard visitation, the chancellor may not impose limitations on the visitation privileges of the non[-]custodial parent." *Fields*, 830 So. 2d at 1268 (¶8). Here, as in *Fields*, there is no evidence to support the chancellor's restrictions on Michael's visitation with E.M.S. *See id.* at 1269 (¶12). Moreover, there is no evidence that E.M.S. would be harmed by standard visitation. Accordingly, we find the chancellor abused his discretion in restricting Michael's visitation, and reverse and remand with instructions to award Michael standard visitation with E.M.S., to include Fridays.

## II. Travel and Costs Associated with Visitation

¶30. Michael further argues the chancellor erred in ordering him to incur all travel and costs associated with visitation. Michael asserts the chancellor failed to consider that he has

to travel two hours each way to pick up and drop off the child, and that due to the driving time and the limited Saturday through Sunday visitation, he is unable to spend a significant amount of time with the child. He also argues that Smith should be required to meet him halfway to pick up and drop off the child.

¶31. The determination of transportation and costs associated with child visitation is within the chancellor's discretion. *Branch v. Branch*, 174 So. 3d 932, 940 (¶24) (Miss. Ct. App. 2015). "There is no authority in Mississippi to the effect that the non[]custodial parent is entitled to the assistance of the [custodial parent] in the logistical aspects of exercising visitation rights." *Id.* (quoting *Hulse v. Hulse*, 724 So. 2d 918, 919 (¶6) (Miss. Ct. App. 1998)). Michael moved out of state to Louisiana after the child's birth, and Smith remained with the child in Laurel. We cannot find the chancellor abused his discretion in ordering Michael to bear the costs and responsibility of transporting E.M.S. for visitation.

¶32. We note that "reasonable participation of the custodial parent" may be warranted in cases where visitation is "substantially impaired" by the noncustodial parent's ability to transport the child. *Id.* at (¶25) (quoting *Hulse*, 724 So. 2d at 919 (¶6)). However, that is not the case here. Michael admits that he can "drive without difficulty" and that "[t]he cost of the travel [i]s not the issue[.]" Accordingly, we affirm the chancellor on this issue.

CONCLUSION

¶33. Overall, we find Michael's appeal is properly before us and Smith's cross-appeal is without merit. The amended judgment is affirmed as to travel and costs associated with

visitation, but reversed as to the visitation schedule and remanded to the chancery court with instructions to award Michael standard visitation with E.M.S., to include Fridays.

¶34. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**LEE, C.J., FAIR, WILSON AND TINDELL, JJ., CONCUR. BARNES, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. GREENLEE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY IRVING, P.J., AND CARLTON, J. WESTBROOKS, J., NOT PARTICIPATING.**

**GREENLEE, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶35. I disagree with the majority's conclusion that the chancellor abused his discretion in setting visitation every other weekend from Saturday through Sunday. Our well-established standard of review for child visitation is abuse of discretion. Even if we disagree with the chancellor's findings, we may not substitute our judgment for that of the chancellor. *Sanderson v. Sanderson*, 170 So. 3d 430, 434 (¶13) (Miss. 2014). There is no evidence the chancellor abused his discretion in setting the visitation schedule. Thus, the chancellor's decision regarding visitation should be affirmed. I agree with the majority that the chancellor correctly found that Michael was responsible for the cost and travel associated with visitation, and that jurisdiction is proper.

¶36. Our standard of review is limited. *Gateley v. Gateley*, 158 So. 3d 296, 300 (¶19) (Miss. 2015). "The chancellor has broad discretion when determining appropriate visitation and the limitations thereon." *Harrington v. Harrington*, 648 So. 2d 543, 545 (Miss. 1994). We "must affirm the chancellor's findings of fact if they are 'supported by substantial

13

evidence unless the chancellor abused his discretion, was manifestly wrong [or] clearly erroneous[,] or [applied] an erroneous legal standard[.]'" *Gateley*, 158 So. 3d at 300 (¶19) (quoting *Holloman v. Holloman*, 691 So. 2d 897, 898 (Miss. 1996)).

¶37.    In setting child visitation, the chancellor must consider "the best interest of the child as his paramount concern," and also "the rights of the non[]custodial parent, recognizing the need to maintain a healthy, loving relationship between the non[]custodial parent and his child." *Id.*  The appellate court "will not substitute its judgment for that of the chancellor 'even if [it] disagrees with the [chancellor] on the finding of fact and might arrive at a different conclusion.'" *Sanderson*, 170 So. 3d at 434 (¶13) (quoting *Owen v. Owen*, 798 So. 2d 394, 397 (¶10) (Miss. 2001)).

¶38.    Michael argues that he was entitled to "standard visitation" of Friday through Sunday every other weekend, in additional to summer and holiday visitation,[4] unless there was evidence showing that such visitation was harmful to E.M.S.  He argues that because there was no such evidence presented, the visitation schedule must be reversed.  Michael and the majority rely on *Fields v. Fields*, 830 So. 2d 1266, 1268 (¶8) (Miss. Ct. App. 2002), where we held "that absent evidence that the child is harmed by standard visitation, the chancellor

_____

[4] The majority cites *Bell on Mississippi Family Law* for the definition of "standard visitation." *Bell* states that standard visitation includes "two weekends a month until Sunday afternoon and at least five weeks of summer visitation[,] plus some holiday visitation." Deborah H. Bell, *Bell on Mississippi Family Law* § 5.08[2] (1st ed. 2005).  Although this definition states that standard visitation ends on Sunday afternoon, it does not say it begins on Friday afternoon, nor is any authority cited stating that standard visitation must begin on Friday.

14

may not impose limitations on the visitation privileges of the non[]custodial parent."

¶39.	In *Fields*, the father was awarded visitation every other weekend from Friday afternoon through Sunday afternoon, but no holiday or summer visitation. *Id.* at (¶4). The chancellor restricted the father's weekend visitation by ordering that, during his visitation, he "ensure that [the child] participates in [up to three] church[-]related functions as determined by [the child's mother]." *Id.* This Court reversed the chancellor's decision, finding that there was no showing of detrimental harm, such that visitation should be restricted. *Id.* We stated that "there must be evidence presented that a particular restriction on visitation is necessary to avoid harm to the child before a chancellor may properly impose the restriction." *Id.* Further, we noted that "the chancellor did not hesitate in awarding . . . standard summer and holiday visitation privileges" in the temporary agreement entered prior to the final judgment, and that no evidence was presented that anything had changed since the temporary order. *Id.* at 1269 (¶12).

¶40.	The chancellor here did not place such requirements or restrictions on Michael's visitation. Michael was awarded summer and holiday visitation and visitation every other weekend. There were no requirements or restrictions on the manner of Michael's visitation; rather, the chancellor simply set the days and times he determined appropriate for visitation based on the child's age and relationship with Michael. The chancellor did not abuse his discretion in doing so, and there is no basis for overruling his decision on appeal. As explained in *Horn v. Horn*, 909 So. 2d 1151, 1162 (¶41) (Miss. Ct. App. 2005), while "the

15

*manner* of visitation may not be restricted" without compelling reason, "the *time restraints*" are in the chancellor's discretion. (Emphasis added).

¶41. In *Horn*, the noncustodial parent argued that the Christmas visitation schedule set by the chancellor was impermissibly restrictive. Christmas visitation was set for every other year from 3 p.m. on December 24 through 3 p.m. on December 25. In upholding the chancellor's decision, this Court stated: "While the chancellor may not restrict a non[]custodial parent's *activities* during visitation without compelling reason, the chancellor has broad discretion to specify *times* for visitation." *Id.* (emphasis added). "During visitation, non[]custodial parents have broad authority and discretion respecting the place and manner of visitation, 'subject only to the time constraints found reasonable and placed in the decree.'" *Id.* (quoting *Cox v. Moulds*, 490 So. 2d 866, 870 (Miss. 1986)).

¶42. In setting the visitation schedule, the chancellor repeatedly stated that there was a lack of bonding between Michael and E.M.S.—who was two years and nine months old at the time of the amended judgment. It was undisputed that Smith had been E.M.S.'s caretaker since birth. Smith testified that Michael "was involved on a limited basis" after E.M.S. was born, and would come by "maybe a couple times a week." But by the time E.M.S. was three months old, he only visited "maybe once a week" or "once every other week for . . . an hour or two hours at a time. And then after she was three months old, he never asked to see her again." Smith testified that she spoke to Michael about once a month, but "he didn't ask to see E.M.S. He never even asked . . . how she was doing." Rather, the conversations were

16

limited to Michael's financial support. Smith testified that she never denied Michael visitation, and she wanted Michael and E.M.S. to have a relationship. She testified that he showed no interest when she suggested he visit.

¶43. Michael testified that he visited E.M.S. from her birth in August 2013 through November 2013. But in December 2013, Smith sent him a text message that gave him the "impression that [Smith] . . . was done with [him]" and "didn't want [his] family to ever meet [E.M.S.]" So he stopped visiting. Smith testified that at some point during this time, Michael expressed that he would agree to terminate his parental rights and that he did not want to continue financial support. In March 2015, Smith filed suit to determine paternity, custody, support, and visitation. Smith testified that at the time of the temporary hearing in June 2015, Michael had not seen or spoken to E.M.S. in over a year.

¶44. At the June 2015 temporary hearing, Michael was granted two-hour visitations twice each week in Laurel. Smith was to supervise the visitations while E.M.S. became acclimated with Michael. Smith testified that Michael did not begin his visits right away, but started visiting in July 2015. Smith stated that Michael visited eleven times and missed seven visits between June 2015 and September 2015. Smith testified that Michael brought his girlfriend to nine of the eleven visits, and that his girlfriend mainly interacted with E.M.S. Michael agreed that his girlfriend mainly bonded with E.M.S. the first few visits—he attributed this to them both being females—and he would sometimes ask to join in whatever activity they were doing. Both Smith and Michael testified that E.M.S. does not recognize Michael as her

17

father, although Michael stated that he desired to have a father-daughter relationship with her.

¶45. In the January 2016 final judgment, the chancellor set a progressive visitation schedule, again noting the lack of bonding between Michael and E.M.S. For the first six weeks, the visitation was to be supervised, every second and fourth Saturday, for two hours at Smith's home or other place in Jones County designated by Smith. For the following thirteen weeks, the visitation was to be unsupervised from 10 a.m. to 5 p.m., every second and fourth Saturday, in Jones County. After that, the visitation was to be unsupervised from 10 a.m. on Saturday until 5 p.m. on Sunday, every second and fourth weekend, in Jones County.

¶46. The May 2016 amended judgment substantially expanded visitation, granting Michael unrestricted visitation every other weekend from Saturday at 10 a.m. to Sunday at 5 p.m., and summer and holiday visitation. The chancellor's finding regarding the lack of bonding between E.M.S. and Michael was supported by the substantial evidence in the record and provided the chancellor's basis for the visitation schedule. Therefore, even if I may have found differently as an original matter, I cannot find that the chancellor abused his discretion in setting the visitation schedule. "[T]he chancellor must award visitation based on what is in the best interest of the child." *Marshall v. Harris*, 981 So. 2d 345, 350 (¶22) (Miss. Ct. App. 2008) (citing *Rogers v. Morin*, 791 So. 2d 815, 820 (¶9) (Miss. 2001)). The chancellor has done so here.

¶47. I note that the chancellor's decision does not preclude Michael from later seeking an alteration of the visitation schedule. Unlike a petition for modification of child custody, a motion for an alteration of a visitation schedule does not require a showing of a material change in circumstances. *Mabus v. Mabus*, 847 So. 2d 815, 818 (¶8) (Miss. 2003). But based on this Court's limited appellate review of the matter before it, I find the amended judgment should be affirmed. Therefore, I respectfully dissent in part.

**IRVING, P.J., AND CARLTON, J., JOIN THIS OPINION**.