GREENLEE, J., CONCURRING IN PART AND DISSENTING IN PART:
 

 ¶ 35. I disagree with the majority's conclusion that the chancellor abused his discretion in setting visitation every other weekend from Saturday through Sunday. Our well-established standard of review for child visitation is abuse of discretion. Even if we disagree with the chancellor's findings, we may not substitute our judgment for that of the chancellor.
 
 Sanderson v. Sanderson
 
 ,
 
 170 So.3d 430
 
 , 434 (¶ 13) (Miss. 2014). There is no evidence the chancellor abused his discretion in setting the visitation schedule. Thus, the chancellor's decision regarding visitation should be affirmed. I agree with the majority that the chancellor correctly found that Michael was responsible for the cost and travel associated with visitation, and that jurisdiction is proper.
 

 ¶ 36. Our standard of review is limited.
 
 Gateley v. Gateley
 
 ,
 
 158 So.3d 296
 
 , 300 (¶ 19) (Miss. 2015). "The chancellor has broad discretion when determining appropriate visitation and the limitations thereon."
 
 Harrington v. Harrington
 
 ,
 
 648 So.2d 543
 
 , 545 (Miss. 1994). We "must affirm the chancellor's findings of fact if they are 'supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong [or] clearly erroneous [,] or [applied] an erroneous legal standard[.]' "
 
 Gateley
 
 ,
 
 158 So.3d at 300
 
 (¶ 19) (quoting
 
 Holloman v. Holloman
 
 ,
 
 691 So.2d 897
 
 , 898 (Miss. 1996) ).
 

 ¶ 37. In setting child visitation, the chancellor must consider "the best interest of the child as his paramount concern," and also "the rights of the non[ ]custodial parent, recognizing the need to maintain a healthy, loving relationship between the non[ ]custodial parent and his child."
 

 Id.
 

 The appellate court "will not substitute its judgment for that of the chancellor 'even if [it] disagrees with the [chancellor] on the finding of fact and might arrive at a different conclusion.' "
 
 Sanderson
 
 ,
 
 170 So.3d at 434
 
 (¶ 13) (quoting
 
 Owen v. Owen
 
 ,
 
 798 So.2d 394
 
 , 397 (¶ 10) (Miss. 2001) ).
 

 ¶ 38. Michael argues that he was entitled to "standard visitation" of Friday through Sunday every other weekend, in additional
 to summer and holiday visitation,
 
 [4]
 
 unless there was evidence showing that such visitation was harmful to E.M.S. He argues that because there was no such evidence presented, the visitation schedule must be reversed. Michael and the majority rely on
 
 Fields v. Fields
 
 ,
 
 830 So.2d 1266
 
 , 1268 (¶ 8) (Miss. Ct. App. 2002), where we held "that absent evidence that the child is harmed by standard visitation, the chancellor may not impose limitations on the visitation privileges of the non[ ]custodial parent."
 

 ¶ 39. In
 
 Fields
 
 , the father was awarded visitation every other weekend from Friday afternoon through Sunday afternoon, but no holiday or summer visitation.
 

 Id.
 

 at (¶ 4). The chancellor restricted the father's weekend visitation by ordering that, during his visitation, he "ensure that [the child] participates in [up to three] church[-]related functions as determined by [the child's mother]."
 

 Id.
 

 This Court reversed the chancellor's decision, finding that there was no showing of detrimental harm, such that visitation should be restricted.
 

 Id.
 

 We stated that "there must be evidence presented that a particular restriction on visitation is necessary to avoid harm to the child before a chancellor may properly impose the restriction."
 

 Id.
 

 Further, we noted that "the chancellor did not hesitate in awarding ... standard summer and holiday visitation privileges" in the temporary agreement entered prior to the final judgment, and that no evidence was presented that anything had changed since the temporary order.
 

 Id.
 

 at 1269
 
 (¶ 12).
 

 ¶ 40. The chancellor here did not place such requirements or restrictions on Michael's visitation. Michael was awarded summer and holiday visitation and visitation every other weekend. There were no requirements or restrictions on the manner of Michael's visitation; rather, the chancellor simply set the days and times he determined appropriate for visitation based on the child's age and relationship with Michael. The chancellor did not abuse his discretion in doing so, and there is no basis for overruling his decision on appeal. As explained in
 
 Horn v. Horn
 
 ,
 
 909 So.2d 1151
 
 , 1162 (¶ 41) (Miss. Ct. App. 2005), while "the
 
 manner
 
 of visitation may not be restricted" without compelling reason, "the
 
 time restraints
 
 " are in the chancellor's discretion. (Emphasis added).
 

 ¶ 41. In
 
 Horn
 
 , the noncustodial parent argued that the Christmas visitation schedule set by the chancellor was impermissibly restrictive. Christmas visitation was set for every other year from 3 p.m. on December 24 through 3 p.m. on December 25. In upholding the chancellor's decision, this Court stated: "While the chancellor may not restrict a non[ ]custodial parent's
 
 activities
 
 during visitation without compelling reason, the chancellor has broad discretion to specify
 
 times
 
 for visitation."
 

 Id.
 

 (emphasis added). "During visitation, non[ ]custodial parents have broad authority and discretion respecting the place and manner of visitation, 'subject only to the time constraints found reasonable and placed in the decree.' "
 

 Id.
 

 (quoting
 
 Cox v. Moulds
 
 ,
 
 490 So.2d 866
 
 , 870 (Miss. 1986) ).
 

 ¶ 42. In setting the visitation schedule, the chancellor repeatedly stated that there was a lack of bonding between Michael and
 E.M.S.-who was two years and nine months old at the time of the amended judgment. It was undisputed that Smith had been E.M.S.'s caretaker since birth. Smith testified that Michael "was involved on a limited basis" after E.M.S. was born, and would come by "maybe a couple times a week." But by the time E.M.S. was three months old, he only visited "maybe once a week" or "once every other week for ... an hour or two hours at a time. And then after she was three months old, he never asked to see her again." Smith testified that she spoke to Michael about once a month, but "he didn't ask to see E.M.S. He never even asked ... how she was doing." Rather, the conversations were limited to Michael's financial support. Smith testified that she never denied Michael visitation, and she wanted Michael and E.M.S. to have a relationship. She testified that he showed no interest when she suggested he visit.
 

 ¶ 43. Michael testified that he visited E.M.S. from her birth in August 2013 through November 2013. But in December 2013, Smith sent him a text message that gave him the "impression that [Smith] ... was done with [him]" and "didn't want [his] family to ever meet [E.M.S.]" So he stopped visiting. Smith testified that at some point during this time, Michael expressed that he would agree to terminate his parental rights and that he did not want to continue financial support. In March 2015, Smith filed suit to determine paternity, custody, support, and visitation. Smith testified that at the time of the temporary hearing in June 2015, Michael had not seen or spoken to E.M.S. in over a year.
 

 ¶ 44. At the June 2015 temporary hearing, Michael was granted two-hour visitations twice each week in Laurel. Smith was to supervise the visitations while E.M.S. became acclimated with Michael. Smith testified that Michael did not begin his visits right away, but started visiting in July 2015. Smith stated that Michael visited eleven times and missed seven visits between June 2015 and September 2015. Smith testified that Michael brought his girlfriend to nine of the eleven visits, and that his girlfriend mainly interacted with E.M.S. Michael agreed that his girlfriend mainly bonded with E.M.S. the first few visits-he attributed this to them both being females-and he would sometimes ask to join in whatever activity they were doing. Both Smith and Michael testified that E.M.S. does not recognize Michael as her father, although Michael stated that he desired to have a father-daughter relationship with her.
 

 ¶ 45. In the January 2016 final judgment, the chancellor set a progressive visitation schedule, again noting the lack of bonding between Michael and E.M.S. For the first six weeks, the visitation was to be supervised, every second and fourth Saturday, for two hours at Smith's home or other place in Jones County designated by Smith. For the following thirteen weeks, the visitation was to be unsupervised from 10 a.m. to 5 p.m., every second and fourth Saturday, in Jones County. After that, the visitation was to be unsupervised from 10 a.m. on Saturday until 5 p.m. on Sunday, every second and fourth weekend, in Jones County.
 

 ¶ 46. The May 2016 amended judgment substantially expanded visitation, granting Michael unrestricted visitation every other weekend from Saturday at 10 a.m. to Sunday at 5 p.m., and summer and holiday visitation. The chancellor's finding regarding the lack of bonding between E.M.S. and Michael was supported by the substantial evidence in the record and provided the chancellor's basis for the visitation schedule. Therefore, even if I may have found differently as an original matter, I
 cannot find that the chancellor abused his discretion in setting the visitation schedule. "[T]he chancellor must award visitation based on what is in the best interest of the child."
 
 Marshall v. Harris
 
 ,
 
 981 So.2d 345
 
 , 350 (¶ 22) (Miss. Ct. App. 2008) (citing
 
 Rogers v. Morin
 
 ,
 
 791 So.2d 815
 
 , 820 (¶ 9) (Miss. 2001) ). The chancellor has done so here.
 

 ¶ 47. I note that the chancellor's decision does not preclude Michael from later seeking an alteration of the visitation schedule. Unlike a petition for modification of child custody, a motion for an alteration of a visitation schedule does not require a showing of a material change in circumstances.
 
 Mabus v. Mabus
 
 ,
 
 847 So.2d 815
 
 , 818 (¶ 8) (Miss. 2003). But based on this Court's limited appellate review of the matter before it, I find the amended judgment should be affirmed. Therefore, I respectfully dissent in part.
 

 IRVING, P.J., AND CARLTON, J., JOIN THIS OPINION.
 

 The majority cites
 
 Bell on Mississippi Family Law
 
 for the definition of "standard visitation." Bell states that standard visitation includes "two weekends a month until Sunday afternoon and at least five weeks of summer visitation[,] plus some holiday visitation." Deborah H. Bell,
 
 Bell on Mississippi
 
 Family Law § 5.08[2] (1st ed. 2005). Although this definition states that standard visitation ends on Sunday afternoon, it does not say it begins on Friday afternoon, nor is any authority cited stating that standard visitation must begin on Friday.